Tracy Ray VAUGHAN, et al., Plaintiffs,

and

Mark Koch, Donald Nelson, and Mark
Osborne, Plaintiffs–Appellants,

v.

James RICKETTS, et al., Defendants–
Appellees.

Nos. 90–16282, 90–16328 and 90–16332.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 23, 1991.

Decided Dec. 13, 1991.

Deborah M. Fine, Lewis & Roca, Phoenix, Ariz., for plaintiff-appellant Osborne.

Thomas J. Dennis, Asst. Atty. Gen., Phoenix, Ariz., for defendants-appellees.

Before D.W. NELSON, HALL and FERNANDEZ, Circuit Judges.

D.W. NELSON, Circuit Judge:

A group of Arizona state prisoners brought this § 1983 action against prison officials, alleging that they had violated the prisoners' Fourth and Eighth Amendment rights by conducting rectal searches for explosives. The case was tried before a jury, which concluded that the prison officials violated both the Fourth and Eighth Amendments, but that they were entitled to qualified immunity from suit on both claims.

Koch, Nelson and Osborne, all prisoners who were searched, appeal. They claim that there is insufficient evidence to support the jury's finding of qualified immunity, and therefore that they were entitled to a judgment notwithstanding the verdict (jnov). Even if there is sufficient evidence, the appellants maintain that the findings of Fourth and Eighth Amendment violations are inconsistent with a finding of qualified immunity, and that they are entitled to a new trial on the basis of inconsistent verdicts. We conclude that the Eighth Amendment issue is not properly before us, and remand the case in part to the district court for further proceedings. We affirm the judgment in all other respects.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 15, 1984, a cellblock warden at Arizona State Prison at Florence received a letter from an inmate informing him that inmates in Wing One were hiding explosives in their rectal cavities. The informant also mentioned that the prisoners had blasting caps but did not know who was hiding all of them. At an interview, the

James Weinstein and Robert P. Jarvis, Arizona State University College of Law Appellate Clinic, Tempe, Ariz., for plaintiffs-appellants Koch and Nelson.

informant produced a balloon of gunpowder from his rectum.

This information was reported to the appellees, Ricketts, Director of the Arizona Department of Corrections ("DOC"), Bramlett, Inspector General of the DOC, and Wawrzaszek, Warden of the prison. After consulting with each other, the appellees ordered rectal searches of 15 inmates in Wing One. They authorized the medical director to use health care staff to conduct the exams. The searches revealed seventeen balloons of gunpowder and a detonator cord, but none of the blasting caps the informant had mentioned.

On March 21, 1984, an inmate in Wing Three informed Wawrzaszek of a bomb he had seen in the shower. Prison officials feared that explosive materials would reach inmates in Wing Two by "fishlining"—a process inmates have developed to pass objects to one another. The defendants therefore ordered a broader round of searches. On March 22 and 23, 150 prisoners in Wings Two and Three were searched, including the appellants, inmates in Wing Two. No blasting caps were found. On March 27, investigators discovered the caps in materials officials had confiscated during the March 15 search.

The searches were conducted by a correctional medical assistant ("CMA"). The CMA wore a glove only on his right hand during each search; after searching a prisoner the CMA pulled off the glove with his left hand and put on a new one. He did not wash his hands between searches. The searches occurred in a non-sanitary hallway with prison guards attending. Prisoners were not examined for medical conditions that could be aggravated by the search. Some prisoners were apparently physically forced to submit to the search. Appellants presented uncontroverted evidence that prison officials laughed at prisoners during the search, and that appellant Koch was not allowed to clean himself or button his pants for over an hour after the search.

Prisoner Vaughan filed a complaint under 42 U.S.C. § 1983 on April 16, 1984. His case was consolidated with several others arising from the same search, including the claims brought by appellants. The prison officials moved for summary judgment on qualified immunity grounds. The district court denied their motion. This court upheld the denial of summary judgment. *Vaughan v. Ricketts*, 859 F.2d 736 (9th Cir.1988) (*"Vaughan I"*), *cert. denied* 490 U.S. 1012, 109 S.Ct. 1655, 104 L.Ed.2d 169 (1989).

The case proceeded to trial. A jury found that the defendants had violated Koch's, Nelson's and Osborne's Fourth Amendment rights and Koch's Eighth Amendment rights. However, the jury also found that all defendants were entitled to qualified immunity on both counts. Plaintiffs moved for jnov. The district court denied the motion, finding that sufficient evidence supported the jury decision of qualified immunity.

Appellants challenge the finding of qualified immunity on three grounds. First, they claim that the finding of qualified immunity was inconsistent with *Vaughan I*, and so violated the law of the case doctrine. Second, they claim that there was insufficient evidence for the jury to have found qualified immunity, and therefore that the district court improperly denied their jnov motion. Third, they argue that the jury's verdicts as to liability and immunity were irreconcilably inconsistent, and that a new trial was therefore required. Appellees in turn contend that Koch did not file a timely notice of appeal.

## DISCUSSION

### I. Timely Filing

■ Appellees argue that Koch's pro se appeal is untimely because his notice of appeal was stamped by the court clerk more than thirty days after the order was recorded. The thirty-day filing requirement of Fed.R.App.P. 4(a) is mandatory and jurisdictional. *Bird v. Reese*, 875 F.2d 256, 256–57 (9th Cir.1989). However, the Supreme Court has held that prisoners filing pro se need only deliver their notice of appeal to prison officials within 30 days with instructions to forward it to the court

clerk. *Houston v. Lack,* 487 U.S. 266, 270, 108 S.Ct. 2379, 2382, 101 L.Ed.2d 245 (1988). Koch contends that he falls within this exception.

■ Appellees contend that the *Houston* rule does not apply because Koch was not really pro se. Koch was represented by counsel at trial, and he never formally discharged his lawyer. Furthermore, he did not seek a judge's approval for the change in representation status. This Circuit requires an "unequivocal" demand from the party wishing to represent himself. *Meeks v. Craven,* 482 F.2d 465, 467 (9th Cir.1973). The local district court rules governing this case stress that, to appear pro se, "an order of substitution shall first have been made by the court after notice to the attorney of each such party, and to the opposite party." U.S. District Court for the District of Arizona, Rule 8(c). Koch did not follow this procedure in discharging his attorney. He says that after the trial, his attorney simply told him that he was on his own and would have to file a notice of appeal pro se.

The purposes behind the "unequivocal demand" requirement may not be furthered by applying it in this case. The court in *Meeks* enunciated the rule to prevent "convicted criminals" from being "given a ready tool with which to upset adverse verdicts after trials at which they had been represented by counsel." 482 F.2d at 467. This concern has no relevance here. Koch did not ask to represent himself during his trial. Nor is he now claiming that he was not adequately represented at trial.

A second reason for the unequivocal demand requirement is the possible confusion and disruption that might result during trial if both party and counsel think they have the authority of representation. *See Duke v. United States,* 255 F.2d 721, 724–26 (9th Cir.), *cert. denied* 357 U.S. 920, 78 S.Ct. 1361, 2 L.Ed.2d 1365 (1958). If as Koch claims his attorney had divested himself of any responsibility, no similar danger existed during his appeal.

The final reason for requiring unequivocal notice to the court is the concern that a party discharging his or her counsel does not understand the full import of this decision and will not be able to provide himself or herself with competent representation. *United States v. Dujanovic,* 486 F.2d 182, 186 (9th Cir.1973). In this case, application of the rule would not further that policy if Koch did not choose to discharge his attorney, but his attorney ceased representation on his own. Although Koch did not make an unequivocal demand to the judge for self-representation, for all practical purposes he was acting pro se. He filed a notice of appeal and other motions without the involvement of any attorney. It would be neither logical nor just to treat Koch as having an attorney if he has had none of the benefits representation is supposed to provide. The district court should determine whether Koch's claims of abandonment by counsel are true. If they are, Koch should be treated as a pro se appellant to whom the *Houston* rule applies.

Assuming that his version of events is correct, Koch was in the same position as the pro se prisoners described in *Houston,* 487 U.S. at 270–72, 108 S.Ct. at 2381–83. In that case, the Supreme Court decided that because of the barriers confronting prisoners filing pro se appeals, their notices did not have to be *received* by the court clerk within the time limit specified for filing an appeal. Like the *Houston* prisoners, Koch could not hand deliver the notice or call the court clerk; neither could he trust a lawyer to file on time.

Therefore, we would consider Koch's appeal timely under *Houston* as long as he delivered the notice to prison officials within the filing time limit with instructions that it be mailed. There is no evidence in the record on this matter. Koch submitted affidavits to this court indicating that the filing is timely. Appellees are correct in asserting that this court cannot decide this question. "[W]here the court had no record of when the appellant delivered the notice to prison authorities 'the proper course was to remand to the district court for a determination of whether the notice of appeal was delivered to prison authorities on time.'" *Hostler v. Groves,* 912 F.2d 1158, 1162 (9th Cir.1990) (quoting *Miller v. Sumner,* 872 F.2d 287, 289 (9th Cir.1989)),

*cert. denied* —— U.S. ——, 111 S.Ct. 1074, 112 L.Ed.2d 1180 (1991). We therefore remand Koch's case to the district court so that it may determine whether it was proper for him to file his own notice of appeal and whether that notice was delivered to prison authorities in a timely fashion.[1]

Koch is the only appellant who prevailed on Eighth Amendment grounds before the jury. Because we remand his appeal today, we have no occasion to consider whether the finding of Eighth Amendment liability was inconsistent with the finding of qualified immunity, and we express no opinion on that issue.

## II. Law of the Case

■ In *Vaughan I,* this court denied the prison officials' motion for summary judgment, holding that if all the plaintiffs' allegations were taken as true, "no reasonable officer could believe that such searches were conducted in a reasonable manner." 859 F.2d at 741. Appellants contend that since they prevailed on the issue of liability, it follows that their allegations were true, and therefore the law of the case doctrine compels the conclusion that no reasonable officer could have believed that the searches were conducted in a reasonable manner. Since qualified immunity applies only where "a reasonable officer could have believed" that the search comported with the Constitution, *see Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987), appellants contend it is unavailable here.

The flaw in this logic is that appellants did not necessarily prove all of their allegations. The verdict on the Fourth Amendment claim allowed the jury to find violations because the searches were conducted without reasonable cause *or* because they were conducted in an unreasonable manner. Thus, the jury could have found rights violated because of lack of probable cause or some manner of abuse; it did not have to find that each allegation was true. Because the jury did not necessarily find all the allegations to be true, a finding of qualified immunity is not precluded by the

opinion in *Vaughan I. See Tribble v. Gardner,* 860 F.2d 321, 328 (9th Cir.1988) (denial of summary judgment motion asserting qualified immunity does not preclude finding of qualified immunity at trial), *cert. denied* 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989).

## III. Sufficiency of the Evidence

■ Next, appellants contend that the defendants did not provide sufficient evidence at the trial to entitle them to qualified immunity, and so the jnov should not have been denied. A court reviewing a denial of a jnov must uphold the denial if the verdict is supported by substantial evidence. *United States ex rel. Reed v. Callahan,* 884 F.2d 1180, 1183 (9th Cir.1989), *cert. denied* 493 U.S. 1094, 110 S.Ct. 1167, 107 L.Ed.2d 1069 (1990). The court must view the evidence in a light most favorable to the non-moving party and draw all inferences in favor of the jury verdict. "If reasonable minds could differ over the verdict, a jnov is inappropriate." *Id.*

■ Qualified immunity is available to government officials if they could reasonably have thought that their actions were lawful in light of the clearly established law and the information they possessed. *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3040, 97 L.Ed.2d 523 (1987); *Kennedy v. Los Angeles Police Department,* 901 F.2d 702, 706 (9th Cir.1989). The appellants "will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that" the action was lawful. *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). Prison officials conducting violative searches are entitled to qualified immunity if "the searches are reasonably related to a legitimate penological goal, or [if] the defendants reasonably could have believed that the searches were conducted to further such a purpose." *Tribble,* 860 F.2d at 328.

By 1984, it was clearly established that the Fourth Amendment requires that rectal

---

1. As did the Court in *Hostler,* this panel will retain assignment of this case.

searches in prisons be conducted with reasonable cause and in a reasonable manner. *Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979). A violation of the Fourth Amendment may be predicated on a finding either that cause was lacking or that the search was conducted in an unreasonable manner.

### A. Cause

■ Koch, Nelson, and Osborne lived in Wing Two, isolated from the other prison wings where bomb material was found or reported. The appellants claim that they had absolutely no contact with any prisoners in other wings during the period immediately preceding the searches, and so no reasonably competent official could think cause to search them for explosives existed.

The central inquiry under *Tribble* is whether the officials could reasonably believe the search was related to legitimate penological goals. The previous search of Wing One had revealed some explosives, but blasting caps were not discovered. Even though the caps were later found in previously confiscated property, at the time of the searches the officials did not possess this information, and so it cannot be used in determining the reasonableness of their belief. Further, the threat of explosives had already spread beyond Wing One, as a prisoner in Wing Three had reported seeing a bomb. If, despite precautions, explosives had been discovered throughout the prison, the officials could reasonably think any Wing Two prisoner might also be hiding the material. Viewing these facts in a light favorable to the appellees, there was sufficient evidence for the jury to find that officials reasonably believed the search was necessary to preserve the safety of the prisoners.

Appellants point to DOC regulations requiring individualized suspicion for each prisoner to be searched and claim that the officials did not have such particularized cause. It is true that there is no showing of probable cause to search each prisoner here. But *Bell* establishes that something less than probable cause is required by the Fourth Amendment for cavity searches of prisoners. 441 U.S. at 560, 99 S.Ct. at 1885. Although the officials could not identify particular individuals whom they suspected, the jury could have found that they were reasonable in believing that the explosives were spreading throughout the cellblock population and could be in any prisoner's possession.

### B. Unreasonable Manner

■ Appellants argue that the manner of the searches was so abusive that no reasonable official could believe the searches were lawful. We must determine whether the evidence, viewed in the light most favorable to the prison officials, supports a finding that a reasonable prison official could have concluded that the searches were conducted in a reasonable manner. If the evidence suggests a choice between reasonable alternatives, we cannot disturb the jury's verdict.

At trial, the officials disputed or offered explanations for a number of the prisoners' allegations. For example, the appellants alleged that officials conducted the searches in an open hall and in view of other inmates and personnel; officials countered that only security guards were present. Appellants claimed that the personnel were untrained in involuntary searches; appellees' expert testified that there is no difference in training for voluntary and involuntary searches, and that the CMAs were fully trained. Appellants asserted that conditions were not sanitary; appellees produced evidence that the CMAs wore gloves and changed them after each search.

Our review of these facts is deferential. The issue before the jury on qualified immunity was not whether the manner of the search was unreasonable, but whether a competent prison official could have believed it was reasonable. Further, we review the jury's conclusion only to determine whether it was supported by substantial evidence. If conflicting evidence makes more than one reasonable decision possible, the panel must defer to the jury's choice. *Garvin v. Greenbank*, 856 F.2d

1392, 1396 (9th Cir.1988). It is not obvious, as the appellants claim, that the officials should have known their actions were unlawful. Depending on which witnesses the jury chose to believe, it could conclude that the search was carried out in a manner which a competent prison official could have believed was reasonable. The district court therefore did not err in denying appellants' motion for jnov.

## IV. Inconsistent Verdicts

Nelson and Osborne argue that even if they are not entitled to jnov, their cases should be remanded for a new trial since the jury findings of Fourth Amendment violations and qualified immunity are irreconcilably inconsistent.

 A court reviewing a judgment on allegedly inconsistent verdicts must uphold the judgment if it is possible to reconcile the verdicts on any reasonable theory consistent with the evidence. *Ward v. San Jose,* 948 F.2d 1097, 1103–04 (9th Cir.1991); *Omar v. Sea–Land Service,* 813 F.2d 986, 991 (9th Cir.1987). The consistency of the verdicts "must be considered in light of the judge's instructions to the jury." *Toner v. Lederle Laboratories,* 828 F.2d 510, 512 (9th Cir.1987), *cert. denied* 485 U.S. 942, 108 S.Ct. 1122, 99 L.Ed.2d 282 (1988).

 The district court instructed the jury that it could find a Fourth Amendment violation if the search was conducted without "reasonable suspicion to justify the search of that plaintiff." Citing *Anderson,* appellants admit that a finding of a lack of cause is "theoretically reconcilable" with qualified immunity, if the officials reasonably but mistakenly thought they had probable cause. But, they counter, in this case the officials had *no* cause, and so could not have reasonably thought the contrary.

The argument here merely repeats appellants' claims that there was not substantial evidence for a finding of qualified immunity. But where inconsistent verdicts are alleged, the test is not whether there was substantial evidence for the jury's conclusion, but whether it is *possible to reconcile* the verdicts. Here, it is. If the jury con-

cluded that the prison officials thought they had sufficient cause to search, but that the officials were mistaken in that belief, it could find both a Fourth Amendment violation and qualified immunity. *See Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039 ("We have recognized that it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials ... should not be held personally liable.") (citing *Malley v. Briggs,* 475 U.S. 335, 344–45, 106 S.Ct. 1092, 1097–98, 89 L.Ed.2d 271 (1986)).

The district court also instructed the jury that it could find a violation of the Fourth Amendment if the search was conducted in an unreasonable and abusive manner and if the officials acted intentionally or recklessly. We need not reach the question of whether a finding of unreasonable manner of search is consistent with qualified immunity. Since the jury could have found the Fourth Amendment violations on the basis of lack of cause to search, its verdicts are not "irreconcilably inconsistent."

## CONCLUSION

Koch's appeal is remanded to the district court to determine whether he filed his appeal in a timely manner. The judgment below is affirmed in all other respects. Each party shall bear its own costs in No. 90–16282. The panel will retain assignment of that case.

AFFIRMED IN PART, REMANDED IN PART.