962 F.2d 14
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Steve MEYERS; Keith Meyers, Plaintiffs-Appellees,
v.
Gregory NAGEL, Defendant-Appellant,
and
City of Circle, Montana; Mccone County, Montana; Mark
Speer, Defendants.
 No. 90-35718.
 United States Court of Appeals, Ninth Circuit.
 Submitted Nov. 4, 1991.*
Decided April 30, 1992.
 
 Before EUGENE A. WRIGHT, HUG and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Police officer Gregory Nagel appeals the district court's order denying his motion for summary judgment based on qualified immunity in Steve Meyers' civil rights action under 42 U.S.C. § 1983.[1] Meyers' section 1983 claim arose from the circumstances surrounding Nagel's arrest of Meyers and the ensuing criminal prosecution. He alleged Nagel lacked probable cause to justify the arrest, Nagel used excessive force, and Nagel conspired with other city employees to deprive him of his constitutional rights by contriving criminal charges against him and fabricating evidence in support of those charges (malicious prosecution).
 
 
 3
 We have jurisdiction to review the denial of summary judgment on the ground of qualified immunity under 28 U.S.C. § 1291. Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). In Mitchell, the Supreme Court clearly defined the appellate court's role when reviewing the appeal from the denial of qualified immunity. Id. at 528.
 
 
 4
 All [the appellate court] need determine is a question of law: whether the legal norms allegedly violated by the defendant were clearly established at the time of the challenged actions or, in cases where the district has denied summary judgment for the defendant on the ground that even under the defendant's version of the facts the defendant's conduct violated clearly established law, whether the law clearly proscribed the actions the defendant claims he took.
 
 
 5
 Id. (Footnote omitted). Ordinarily, the question of immunity should be decided by the court long before trial in order to protect the officer from suit altogether, rather than merely providing him with a defense to liability. See Hunter v. Bryant, 112 S.Ct. 534, 536-37 (1991).
 
 I. Qualified Immunity
 
 6
 In order to state a claim under section 1983, the plaintiff must allege that (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived him of rights, privileges or immunities secured by the Constitution or laws of the United States. 42 U.S.C. § 1983. Qualified immunity operates to shield government officials from liability for civil damages while they are performing discretionary functions. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); White By White v. Pierce County, 797 F.2d 812, 815 (9th Cir.1986). The government official will enjoy this protection only "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818.
 
 
 7
 Recently, we enunciated a three-part test to determine whether an official may prevail on a qualified immunity defense. See Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir.1991). In applying the test, the court must: 1) identify the specific right allegedly violated; 2) determine whether that right was so "clearly established" as to alert a reasonable officer to its constitutional parameters; and 3) make the ultimate determination of whether a reasonable officer could have believed lawful the particular conduct at issue. Id. See also Davis v. Scherer, 468 U.S. 183, 190 (1984) ("Whether an official may prevail in his qualified immunity defense depends upon the objective reasonableness of [his] conduct as measured by reference to clearly established law."). We will evaluate each of Meyers' claims under this standard to determine whether qualified immunity should operate to shield Nagel from this suit.
 
 
 8
 a. False Arrest
 
 
 9
 Meyers alleges Nagel lacked probable cause for the arrest, a violation of his Fourth Amendment right to be free from an unlawful seizure by a police officer. Meyers correctly argues that the Fourth Amendment prohibits arrests without probable cause. See Beck v. Ohio, 379 U.S. 89, 90-91 (1964). Probable cause exists when the officer has "a reasonable belief, evaluated in light of the officer's experience and the practical considerations of everyday life, that a crime has been, is being, or is about to be committed." Hopkins v. City of Sierra Vista, 931 F.2d 524, 527 (9th Cir.1991) (citation and internal quotations omitted).
 
 
 10
 It is undisputed that at the time Nagel arrested Meyers it was "clearly established" constitutional law that, absent probable cause, Nagel could not arrest Meyers. See id.; McKenzie v. Lamb, 738 F.2d 1005, 1007 (9th Cir.1984) (An arrest without probable cause violates the Fourth Amendment and gives rise to a cause of action for damages under section 1983.). While this circuit permits a section 1983 claim based on a violation of the Fourth Amendment, see Robins v. Harum, 773 F.2d 1004, 1008 (9th Cir.1985), it is necessary to decide whether it is "clearly established" that the circumstances confronting the officer at the time of the conduct did not constitute probable cause. See Anderson v. Creighton, 483 U.S. 635, 641-42 (1987).
 
 
 11
 An officer may be immune from suit even if there was not probable cause for the arrest, if he reasonably believed probable cause was present. Malley v. Briggs, 475 U.S. 335, 344-45 (1986) (It is inevitable that law enforcement officers will sometimes reasonably but mistakenly conclude that probable cause is present and in those cases, the officer should not be held personally liable.); Fuller v. Jewelry, 950 F.2d 1437, 1443 (9th Cir.1991) ("[E]ven if the officers were mistaken that probable cause to arrest the [plaintiffs] existed, they are nonetheless immune from liability if their mistake was reasonable.").
 
 
 12
 Relying on three different Montana statutes,[2] Nagel argues that under the circumstances of this case, it was reasonable for him to believe that probable cause existed to arrest Meyers. The parties' testimony indicated that the hour was late; Meyers was intoxicated; he attempted to prevent Shawna Fellon from driving by grabbing the keys from her and holding her wrists; Fellon's nose was swollen; Fellon asked Nagel to take her to the grandparent's residence because she and Meyers were fighting; and when Nagel attempted to talk with Fellon privately to determine what was going on Meyers opened the police car door and said "[w]hat in the hell is going on."
 
 
 13
 Because the underlying facts surrounding the arrest are not in dispute, we must decide as a matter of law whether Nagel is entitled to qualified immunity from Meyers' claim of false arrest. We determine it was not "clearly established" that the events confronting Nagel that night did not constitute probable cause to arrest Meyers. Additionally, even assuming there was not probable cause for Nagel to arrest Meyers, we believe Nagel's conduct in this case was reasonable as measured by the standard to which he is constitutionally bound. Under the circumstances it was objectively reasonable for Nagel to believe Meyers was violating or was about to violate Montana's Domestic Abuse statute. See Mont.Code Ann. § 45-5-206. Consequently, it was error for the district court to deny Nagel summary judgment on the ground of qualified immunity from Meyers' claim of false arrest.
 
 
 14
 b. Excessive Force
 
 
 15
 Meyers alleges Nagel used excessive force when he "put one hand up high behind [Meyers'] back" while handcuffing him. The use of excessive force by a police officer to effectuate an arrest is a violation of the arrestee's Fourth Amendment right to be free from an unreasonable seizure. See White, 797 F.2d at 816.
 
 
 16
 It is undisputed that the Fourth Amendment right to be free from an unreasonable seizure resulting from excessive force was "clearly established" at the time of Meyers' arrest so as to alert Nagel to its constitutional parameters. See, e.g., id. To determine whether the force was reasonable under the Fourth Amendment, the court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham v. Connor, 490 U.S. 386, 396 (1989); Hansen v. Black, 885 F.2d 642, 645 (9th Cir.1989). The balancing "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. In two recent cases, this court denied police officers qualified immunity against claims of excessive force, because the question of whether the force was reasonable could not properly be resolved on summary judgment. See Barlow v. Ground, 943 F.2d 1132, 1135-36 (9th Cir.1991); Hansen, 885 F.2d at 645.
 
 
 17
 While we are mindful of the Supreme Court's recent admonition that, ordinarily, the court should resolve qualified immunity long before trial, see Hunter, 112 S.Ct. at 536-37, it is impossible for this court to determine whether Nagel used excessive force in his arrest of Meyers' or, whether Nagel reasonably believed his conduct on that night to be lawful because the underlying facts are in dispute. Meyers' alleges Nagel used excessive force when he "put one hand up high behind [Meyers'] back" while handcuffing him. Nagel admits that he used extra force in arresting Meyers' but counters that it was warranted because Meyers was resisting arrest. Fellon, a witness to the arrest, testified that Meyers did not appear to be resisting arrest and he stated at the time that his arm hurt and Nagel was being "rough". Apparently, Meyers did not seek or require any medical treatment following the arrest, nor did he present medical evidence of any type of injury. He did state, however, that his shoulder was sore for two weeks following the arrest.
 
 
 18
 If the facts are as Meyers claims, the force used by Nagel may be excessive and he could not reasonably believe his actions were lawful. Viewing the facts in the light most favorable to Meyers, we cannot determine as a matter of law that there was no excessive force or that Nagel's conduct was objectively reasonable. The question cannot be resolved on summary judgment. A reasonable jury could conclude that Meyers was not resisting arrest and the extra force conceded to by Nagel was excessive under the totality of the circumstances. Consequently, we affirm the district court's decision to deny summary judgment on qualified immunity grounds for Meyers' claim of excessive force.
 
 
 19
 Our conclusion that the district court's denial of summary judgment was proper does not preclude a finding of no liability for Nagel's actions. See Mitchell, 472 U.S. at 527; Vaughan v. Ricketts, 950 F.2d 1464, 1468 (9th Cir.1991). Should Meyers fail to prove his version of the facts or the trier of fact conclude that the extra force was not excessive under the circumstances and Nagel's actions were reasonable, Nagel would prevail. See id.
 
 
 20
 c. Malicious Prosecution
 
 
 21
 Generally, a claim of malicious prosecution is not cognizable under section 1983 if process is available within the state judicial system to provide a remedy. Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir.1987). An exception to this principle exists, however, "when a malicious prosecution is conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to a denial of constitutional rights." Id. at 562 (internal quotations and citation omitted). While common law and state tort law do not define the scope of liability under section 1983, see, e.g., Baker v. McCollan, 443 U.S. 137 (1979), the section 1983 plaintiff must allege some wrong. To decide whether the alleged malicious prosecution was conducted with the intent to deprive Meyers of his constitutional rights, we must first decide if Meyers can state a claim for malicious prosecution under Montana law.
 
 
 22
 In Montana, to prove the common law tort of malicious prosecution the complainant must show the following: 1) a judicial proceeding was commenced against him; 2) the other party was responsible for instigating the proceeding; 3) there was absence of probable cause for the proceeding; 4) malice was the motivator behind the other party's action; 5) the proceeding terminated in favor of the complainant; and 6) the complainant suffered damages. See Rouse v. Anaconda-Deer Lodge County, 817 P.2d 690, 694-95 (Mont.1991). In this context, probable cause means "reasonable grounds for suspicion, supported by circumstances reasonably strong in themselves to warrant a reasonably prudent and cautious man in the belief that the accused is guilty of the offense with which he is charged." Orser v. State, 582 P.2d 1227, 1233 (Mont.1978) (internal quotations and citation omitted). Under Montana law, "[w]hen there is no conflict in the evidence as to circumstances surrounding a defendant's actions, the court may rule on the presence or absence of probable cause without any jury findings." Id. If a conflict does exist with regard to whether there was probable cause, the jury must determine "what the defendant's acts were and the circumstances under which he acted." Id.; accord Reece v. Pierce Flooring, 634 P.2d 640, 643 (Mont.1981).
 
 
 23
 Although Montana law permits the defendant officer to rely on the affirmative defense of "advice of counsel", it is insufficient for the defendant to describe the factual allegations underlying the prosecution and then to testify generally that all such facts were conveyed to the prosecutor. Hill v. Burlingame, 797 P.2d 925, 927 (Mont.1990). "[I]t is a question of fact for the jury whether the defendant fairly communicated to his counsel all of the facts which he knew or ought to have known, and whether he acted in good faith upon the advise received, where different conclusions may be drawn from the evidence." Id. The charges against Meyers were asserted after consultation with and upon the advice of counsel. We do not know, however, the specific facts Nagel communicated to the City Attorney. It is impossible for this court to make a factual determination whether Nagel's version of the facts were fair and complete, and whether Nagel acted on the City Attorney's advice in good faith. This defense would be available to Nagel at trial, but it is inadequate at this juncture to protect him from suit.
 
 
 24
 In his complaint, Meyers alleged the fabrication of evidence and the malicious prosecution denied him equal protection of the law as guaranteed by the Fourteenth Amendment and a denial of due process as guaranteed by the Fifth Amendment. These are clearly established fundamental rights guaranteed by the Constitution.
 
 
 25
 Meyers contended that Nagel knowingly tampered with the surveillance camera, then took photographs of the "broken" camera and subsequently charged Meyers with criminal mischief for the act of breaking the surveillance camera. Subsequently, a jury determined Meyers was not guilty of the criminal mischief charge. In addition, Meyers claimed Nagel directed the Police Dispatcher, Jacque Limesand, to include false information in the police report concerning the surveillance camera and Meyers demeanor at the station. The transcripts from Meyers' criminal trials, reveal testimony from both Nagel and Limesand which tends to support these allegations by Meyers. If the facts are as Meyers alleges them to be, no reasonable officer could have believed Nagel's conduct was lawful. These questions cannot be resolved on summary judgment. We agree with the district court that a grant of qualified immunity from Meyers' claim for malicious prosecution would be improper. Once again, however, in order to prevail at trial, Meyers must succeed in proving his version of the facts to the jury, not only with regard to each element of malicious prosecution, but also that the circumstances of the prosecution were sufficient to bring the common law tort claim within the scope of section 1983.
 
 
 26
 Each side shall bear its own costs on appeal.
 
 The order of the district court is
 
 27
 AFFIRMED IN PART; AND REVERSED IN PART; AND REMANDED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Initially Steve Meyers and his father, Keith Meyers, filed an action under 42 U.S.C. §§ 1983 and 1985 against Nagel, the City of Circle and Officer Mark Speer. Following orders granting summary judgment and voluntary dismissals, the only remaining claims are those by Steve Meyers against Nagel under section 1983. The sole order appealed from is the order denying Nagel's Motion to Dismiss for reasons of qualified immunity
 
 
 [2]
 The three statutes are as follows: 1) Mont.Code Ann. § 45-7-302, Obstructing a peace officer or other public servant; 2) Mont.Code Ann. § 45-8-101, Disorderly Conduct, and; 3) Mont.Code Ann. § 45-5-206, Domestic Abuse