Herbert Darrell HAY,
Plaintiff–Appellant,

v.

George P. WALDRON, et al.,
Defendants–Appellees.

No. 86–2025

Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 22, 1987.

Herbert D. Hay, pro se.

Gabriel G. Quintanilla, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for defendants-appellees.

Before REAVLEY, RANDALL and JOLLY, Circuit Judges.

RANDALL, Circuit Judge:

Herbert Darrell Hay, a *pro se* plaintiff and Texas Department of Corrections inmate, appeals the district court's denial of preliminary injunctive relief in his section 1983 action. Hay's two motions for injunctive relief alleged that the Texas Department of Corrections' strip search procedures for administrative segregation inmates, an inmate classification which included Hay, violates the fourth amendment to the United States Constitution. Hay further alleged that the defendants, a group consisting of Texas Department of Corrections employees and administrators, applied the prison system's strip search procedures and other prison policies discriminatorily to Hay and to potential wit-nesses in his civil rights lawsuit in retaliation for Hay's filing of the suit and in violation of the comprehensive, remedial injunctive decree issued in *Ruiz v. Estelle*, 503 F.Supp. 1265 (S.D.Tex.1980), *aff'd in part and vacated in part*, 679 F.2d 1115 (5th Cir.), *amended in part and vacated in part*, 688 F.2d 266 (5th Cir.1982), *cert. denied*, 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983).

Because we find no abuse of discretion in the district court's denial of injunctive relief with respect to the constitutionality of the Texas Department of Corrections' strip search procedures for administrative segregation inmates, we uphold the ruling of the district court on that issue. However, we reverse the district court's denial of injunctive relief with respect to the issue of retaliatory or discriminatory application of the strip search procedures and other prison policies. We remand that issue for further proceedings in accordance with this opinion.

I.

Appellant Hay is a "special needs" inmate housed in the Psychiatric Treatment Center of the Beto II Unit, Texas Department of Corrections ("TDC"). While housed in TDC's Goree Unit in 1984, Hay filed the section 1983 action which underlies this interlocutory appeal and which challenges TDC policies denying him access to other mentally disturbed inmates for the rendering of "mutual legal assistance." Ancillary to the section 1983 action, Hay filed two motions for preliminary injunctive relief—the first on July 17, 1984 and the second on January 25, 1985. Hay's initial motion for injunctive relief alleged an unspecified violation of the injunctive decree in *Ruiz v. Estelle* and made other sweeping allegations.[1] The second motion requested

---

1. To summarize Hay's claims under the July 17, 1984 motion for injunctive relief, Hay sought to prohibit the defendants from

(1) subjecting Hay and other inmates connected with the underlying lawsuit from any disciplinary action or transfer to another unit;
(2) hindering Hay's association with other inmates with whom Hay desired to conduct legal activities;

(3) placing Hay in the Psychiatric Treatment Center solely on the basis of his psychiatric records;
(4) denying medical assistance in retaliation for undertaking legal action or for assisting other inmates with legal actions;
(5) retaliating against Hay for his legal activities in a manner that would violate the *Ruiz* decree; and

a court order directing defendants to respond to the first motion, alleged an increase in retaliatory harassment, and requested that the strip searching of all administrative protection inmates be halted or, alternatively, that Hay and his witnesses be exempted from the strip search procedures. The motions were set for hearing on June 26, 1985.

On June 17, 1985, Hay submitted a list of twelve inmate witnesses and requested the court to issue writs of habeas corpus *ad testificandum.* Hay also submitted a list of eleven TDC employees and administrators to be subpoenaed as witnesses. Additionally, on June 21, 1985, Hay filed a motion for "Amended Specific Relief If Preliminary Injunction Granted," which restated many of Hay's claims under the two motions for injunctive relief and which detailed additional requests for relief.[2]

At the hearing before a United States magistrate on June 26, 1985, Hay's testimony served to clarify and condense his labyrinthine *pro se* pleadings into two substantive pleas for relief: First, Hay sought to enjoin TDC's strip search procedures for administrative segregation inmates ("the Strip Search Policy") as violative of the fourth amendment.[3] Second, Hay sought to enjoin retaliatory or discriminatory application of the Strip Search Policy and other prison policies to himself and to inmates who are potential witnesses in his civil rights action.

■ At the hearing, the defendants presented three witnesses who testified regarding TDC's adoption and implementation of the Strip Search Policy. However, the retaliation issue was not litigated. The defendants presented no evidence on retaliation in response to Hay's testimony and, in fact, they argued that retaliatory application of TDC policies was not raised properly by Hay's motions for injunctive relief.[4] None of Hay's requested witnesses, whether inmate or TDC employee, was present to testify since the magistrate had not issued writs or subpoenas to compel attendance. At the close of the hearing and in response to Hay's request for an opportunity to present his witnesses, the magistrate noted that the hearing had not addressed the retaliation issue.[5] The magistrate further indicated he would take "under advisement" Hay's requests to present witnesses

(6) continuing to incarcerate Hay and other inmates associated with this lawsuit in the current facility unless the terms of the proposed injunction were met within 30 days.

2. Hay demanded, in addition to previously requested relief, the following "Amended Specific Relief":

(1) access to inmates in punitive segregation to conduct "mutual legal assistance";
(2) elimination of strip searches without probable cause for Hay and his witnesses;
(3) notice to the defendants that harassment, intimidation and retaliation are prohibited;
(4) administration of lie detection tests to the defendants; and
(5) access to comprehensive medical care through an independent hospital, including psychiatric treatment and CAT scans as required.

3. The TDC visual body cavity strip search procedure in issue is enforced each time an administrative segregation inmate enters or leaves his cell. The strip search procedure requires the inmate to fully disrobe in his cell and to expose for visual inspection the various areas of his person where a weapon or contraband might be concealed. This necessitates that he raise his testicles and spread his buttocks for visual inspection. The inmate is not touched physically by the inspecting guard, who remains outside the locked cell.

4. Under *Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972) (per curiam), Hay's *pro se* pleadings are held to a less stringent standard than formal pleadings drafted by lawyers. The issue of retaliatory application of prison policies, including the Strip Search Policy, was raised—however inartfully—by both motions for injunctive relief and, again, by the request for "Amended Specific Relief." Under *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), and the simple guide of Federal Rule of Civil Procedure 8(f), that "all pleadings shall be so construed as to do substantial justice," we do not doubt that the defendants received "fair notice" of Hay's retaliation claims. *Conley,* 355 U.S. at 48, 78 S.Ct. at 103.

5. "[A]nd I haven't gotten into application [of the Strip Search Policy] as to individual persons, such as yourself or as to your witnesses." *Record on Appeal* vol. 4, p. 132. *See also* p. 137.

and to set a hearing date for the remaining "motion" for injunctive relief.[6]

On September 5, 1985, the magistrate issued recommendations and findings of fact. In addition to recommending the denial of Hay's motion to enjoin the Strip Search Policy, the magistrate made findings regarding Hay's retaliation claim. Specifically, the magistrate found "no evidence that the [Strip Search Policy] was applied differently for segregation inmates at Goree" and "no evidence that the [Strip Search Policy] was applied to Plaintiff Hay in a discriminatory manner as opposed to other inmates in protective detention." On December 3, 1985, the magistrate dismissed Hay's June 17 Motion for the Production of Witnesses as moot, noting that the June 26, 1985 hearing already had been held. No other hearing date was set. Finally, on December 9, 1985, the district court adopted the findings and recommendations of the magistrate and denied both of Hay's motions for injunctive relief.

## II.

■■■ On appeal, Hay argues three points. First, Hay alleges that the magistrate should have applied a "least restrictive means" test or should have imposed a "probable cause" standard in balancing the state's security need for the Strip Search Policy against inmates' privacy rights. Second, Hay challenges the magistrate's denial of injunctive relief (i) without a hearing on the issue of discriminatory enforcement of prison policies and (ii) without se-

curing the testimony of Hay's requested witnesses. Finally, Hay asserts that the district court failed to make a *de novo* review of the magistrate's findings as is required under 28 U.S.C. § 636(b)(1). We review seriatim the points raised by Hay, with our inquiry focusing first on whether the magistrate applied the law correctly in denying injunctive relief with respect to the Strip Search Policy itself.[7]

The law is well-settled that the grant or denial of injunctive relief rests in the sound discretion of the trial court. We will not overturn the decision of the trial court absent an abuse of discretion. *Lindsay v. City of San Antonio*, 821 F.2d 1103, 1107 (5th Cir.1987); *United States v. LULAC*, 793 F.2d 636, 642 (5th Cir.1986); *Lubbock Civil Liberties Union v. Lubbock Indep. School Dist.*, 669 F.2d 1038, 1049 (5th Cir. 1982), *cert. denied*, 459 U.S. 1155, 103 S.Ct. 800, 74 L.Ed.2d 1003 (1983). Of course, we will review the magistrate's discretionary rulings in light of the four prerequisites that a plaintiff must show to obtain preliminary injunctive relief:

(1) a substantial likelihood of success on the merits;

(2) a substantial threat of irreparable injury if the injunction is not granted;

(3) an evaluation that the threatened injury to the plaintiff outweighs the threatened injury the injunction may cause the defendant; and

(4) a determination that the injunction does not disserve public interest.

---

6. The hearing transcript does not identify which "motion" remained to be heard. In fact, neither Hay nor the magistrate identified the matters before the court according to their source in the pleadings. Instead, the myriad grievances plead by Hay reduced to the two substantive issues which Hay articulated at the hearing. All of Hay's grievances either were subsumed within those two issues, which we review today, or were abandoned upon Hay's failure to present them at the June 26 hearing.

It is clear from the hearing transcript that Hay did present complaints of retaliatory and discriminatory treatment. It is also clear that the magistrate reserved the individual retaliation issues for a future hearing, and that the magistrate reserved his decision on the attendance of witnesses for that hearing.

7. As a preliminary matter, we find that the magistrate's procedural mistakes concerning Hay's motion to secure the testimony of witnesses at the June 26 hearing, *see* Part III *infra*, were insufficient to vitiate the magistrate's denial of injunctive relief on the issue of the Strip Search Policy's constitutionality. Hay did not demonstrate that the requested witnesses could have illuminated further the fourth-amendment issue. We note that testimony by inmate-witnesses would have been cumulative of Hay's testimony, and that the defendants presented for cross-examination the TDC officials responsible for and knowledgeable of the Strip Search Policy—including one witness requested by Hay. Thus, we conclude that the magistrate's blunders constituted, at most, harmless error regarding the issue of the Strip Search Policy's constitutional viability.

*Lindsay,* 821 F.2d at 1107; *LULAC,* 793 F.2d at 642. These four prerequisites to injunctive relief are mixed questions of law and fact; we must uphold subsidiary factual findings unless clearly erroneous, but conclusions of law and the ultimate application of the law to the facts are freely reviewable. *LULAC,* 793 F.2d at 642. Moreover, we add the caveat that injunctive relief in the form of "superintending federal injunctive decrees directing state officials" is an extraordinary remedy. *Morrow v. Harwell,* 768 F.2d 619, 627 (5th Cir.1985). Such relief is "appropriate only when constitutional violations have been shown *and* when state officials are demonstrably unlikely to implement the required changes without its spur." *Id.* (emphasis in original). Thus, in reviewing the propriety of injunctive relief in the case before us, our analysis must also reflect a sensitivity towards principles of federalism—specifically, that in cases implicating state/federal relations, federal courts ought not to intrude into state affairs any more than is necessary. *Id.* at 627–28; *see Rizzo v. Goode,* 423 U.S. 362, 379, 96 S.Ct. 598, 608, 46 L.Ed.2d 561 (1976).

In this case, Hay failed the first prong of the four-pronged preliminary injunction rubric. The magistrate determined that the Strip Search Policy did not contravene the fourth amendment and that Hay's claim, therefore, would fail on the merits. Hay challenges the magistrate's determination on two grounds: First, as a point of law, Hay argues that the magistrate should have applied a "least restrictive means" test in balancing the state's security needs against the inmates' privacy interests. Second, again as a point of law, Hay asserts that, because no probable cause exists to strip search administrative segregation inmates, the Strip Search Policy is not reasonably related to bona fide penalogical security objectives and must fail the reasonableness test of the fourth amendment. We address these interrelated arguments together.

█ When evaluating the security policies adopted by prison administrators, a court is not required to apply a "least re-

strictive means" test. Nor is "probable cause" the *sine qua non* of constitutionality under the fourth amendment. Rather, in *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), the Supreme Court articulated that

> [t]he test of reasonableness under the Fourth Amendment ... requires a balancing of the need for the particular search against the invasion of the personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

441 U.S. at 559, 99 S.Ct. at 1884. Later, in *Block v. Rutherford,* 468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984), the Supreme Court specifically noted that "administrative officials are not obliged to adopt the least restrictive means to meet their legitimate objectives." *Rutherford,* 468 U.S. at 591 n. 11, 104 S.Ct. at 3235 n. 11; *accord Thorne v. Jones,* 765 F.2d 1270, 1275 n. 7 (5th Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1198, 89 L.Ed.2d 313 (1986). Clearly, the magistrate did not abuse his discretion in refusing to apply a "least restrictive means" test in evaluating the probable outcome of the issue on the merits.

Further, in *Wolfish* the Supreme Court rejected the argument that a strip search, including the exposure of body cavities for visual inspection, must be predicated upon probable cause. 441 U.S. at 558, 560, 99 S.Ct. at 1885; *accord United States v. York,* 578 F.2d 1036, 1041 (5th Cir.), *cert. denied,* 439 U.S. 1005, 99 S.Ct. 619, 58 L.Ed.2d 682 (1978). In evaluating the reasonableness of a visual body cavity inspection procedure identical to that employed by TDC, the *Wolfish* Court upheld a policy requiring such a search without probable cause after every contact visit with a person from outside the institution—even as to pretrial detainees. *Id.,* 441 U.S. at 562, 99 S.Ct. at 1886. Similarly, in *United States v. Lilly,* 576 F.2d 1240, 1246–47 (5th Cir. 1978), we found a legitimate need for a more intrusive policy, a body cavity search which was executed without probable cause

when drug rehabilitation inmates returned to prison from unsupervised absences. "Probable cause" is not the definitive litmus for constitutionality of prison search policies.

■ We recognize, further, the flexibility that must be accorded prison administrators in carrying out their responsibilities to the public and to the inmates under their care and control. When reviewing policies designed to preserve internal order, discipline and security—preeminent penalogical objectives under *Wolfish, Rutherford* and *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)—a court should accord broad deference to prison administrators regarding the reasonableness of the scope, the manner, the place and the justification for a particular policy. *See Wolfish*, 441 U.S. at 547, 99 S.Ct. at 1878. If a policy is reasonably related to legitimate security objectives and there is no substantial evidence to indicate that prison officials have exaggerated their response to security considerations, courts ordinarily should defer to prison administrators' expertise. *Rutherford*, 468 U.S. at 591, 104 S.Ct. at 3235; *accord Thorne*, 765 F.2d at 1275.

■ In the case before us, the Strip Search Policy evolved in response to the rising tide of violence which flooded Texas prison systems in their recent past. The policy is applied to administrative segregation inmates—many of whom are violent or are potential victims of violence.[8] Some of the violence may even be self-directed, as in the case of suicide or self-mutilation—behavioral tendencies which Hay admittedly possesses. Other administrative segregation inmates have repeatedly and seriously violated prison disciplinary rules, indicating

an inability or an unwillingness to integrate safely with the general prison population. The Strip Search Policy, which is applied only to this segregated group of inmates, is designed to prevent the transfer or concealment of prison contraband, including weapons which can be manufactured by inmates from such seemingly innocuous materials as cardboard or toothbrushes.

The record contains substantial evidence that the Strip Search Policy reasonably relates to legitimate penalogical objectives. We find no evidence that the strip search procedure is an exaggerated response by prison officials to conditions within the prison system. Furthermore, we note that other courts have upheld as reasonable similar intrusions upon inmates' privacy for substantially similar reasons. *See, e.g., Goff v. Nix*, 803 F.2d 358 (8th Cir.1986), *cert. denied*, — U.S. —, 108 S.Ct. 115, 98 L.Ed.2d 73 (1987) (visual body cavity inspection in maximum security facility upheld as a condition of any movement outside the segregation unit); *Arruda v. Fair*, 710 F.2d 886 (1st Cir.), *cert. denied*, 464 U.S. 999, 104 S.Ct. 502, 78 L.Ed.2d 693 (1983) (maximum security facility inmates subjected to visual body cavity inspection upon leaving and returning to cells when visiting prison library or infirmary, and for supervised, noncontact visitations).

■ In summary, we reject Hay's endorsement of a "least restrictive means" test or a "probable cause" standard as the measure of constitutionality for strip searches in the correctional facility setting. The magistrate applied the proper legal precepts to the facts in evaluating the merits of Hay's fourth-amendment claims and in determining that the Strip Search Policy

---

8. Pursuant to *Ruiz v. Estelle*, 503 F.Supp. 1265, the Texas Department of Corrections issued administrative directives requiring inmate segregation. A June 5, 1985 directive implemented "administrative segregation," defined as:

> A non-punitive status involving separation of an inmate from the general population for the purpose of maintaining safety, security and order among general population inmates and correctional personnel and within the prison institution.

Four categories of inmates are placed in administrative segregation:

(1) Security Detention—inmates who are an escape risk, who threaten the physical safety of other inmates and staff, or who have repeatedly violated and seriously violated disciplinary rules;
(2) Pre-hearing Detention—inmates charged with or suspected of disciplinary violations and who are awaiting hearing;
(3) Protective Custody—inmates who have been threatened by others or are a threat to themselves;
(4) Emergency Detention—inmates acting in concert, as with a work stoppage.

reasonably related to legitimate security needs. Because the magistrate and the district court, by adoption, acted within the bounds of the discretion vested in them as the trial court, we uphold the denial of injunctive relief.

### III.

 Hay's second point of error focuses on the magistrate's denial of injunctive relief (i) without a hearing on the issue of discriminatory or retaliatory enforcement of prison policies and (ii) without securing the testimony of Hay's requested witnesses. At the June 26 hearing, the magistrate reserved for future determination the yet unlitigated issue of alleged retaliation as well as the issue of Hay's alleged need for the testimony of requested witnesses on that issue. The defendants concur in their brief on appeal that the issue of discriminatory application of prison policies was reserved for a future hearing. Having so reserved these issues, the magistrate inexplicably recommended disposition of them in his Memorandum and Recommendation entered September 5, 1985. Specifically, the magistrate denied Hay's Motion to Compel the Attendance of Witnesses as moot because the June 26 hearing—the hearing at which he had postponed determination of the issues—already had been held. The magistrate then made factual findings that Hay's claims of retaliation were not supported by evidence. Because the issue whether the Strip Search Policy was discriminatorily applied had not been litigated at the June 26 hearing and indeed had been reserved, the magistrate's factual findings were clearly premature.

We reverse the magistrate's and, by adoption, the district court's denial of Hay's motion for injunctive relief with respect to the issue whether prison policies were applied in a retaliatory or discriminatory manner. We remand for further development of the motion, including a determination whether writs or subpoenas should issue for any of Hay's requested witnesses. However, we express no opinion on the merits or on whether the district court should conduct an evidentiary hearing; the issues may be susceptible to summary disposition after Hay has had an opportunity to develop his claim.

### IV.

 Hay's final claim on appeal is that the district court failed to review *de novo* the findings and recommendations of the magistrate as required under 28 U.S.C. § 636(b)(1). Section 636(b)(1) provides that "[a] judge of the court shall make a *de novo* determination of those portions of the [magistrate's] report or specified proposed findings to which objection is made." We held in *United States v. Elsoffer*, 644 F.2d 357, 359 (5th Cir. Unit B April 1981), that a district judge must exercise his non-delegable authority by reviewing the actual testimony, not merely the magistrate's findings and recommendation, in a *de novo* review.

Here, the district court's December 9, 1985 Order adopting the magistrate's Memorandum and Recommendations indicates on its face that the district court reviewed both the relevant pleadings and the testimony of the June 26 hearing in adopting the magistrate's recommendations and findings of fact. We reject Hay's final point of error.

### V.

We AFFIRM the denial of injunctive relief with respect to the constitutionality of TDC's strip search policy for administrative segregation inmates. However, we REVERSE and REMAND for further proceedings in accordance with this decision the denial of injunctive relief with respect to Hay's claims of retaliatory and discriminatory treatment.