**Edward Nelson RICKMAN,**
**Plaintiff–Appellant,**

v.

**Warden AVANITI, Warden at CB–6,**
**ASPC–Florence, et al.,**
**Defendants–Appellees.**

No. 87–1975.

United States Court of Appeals,
Ninth Circuit.

Submitted April 11, 1988 *.

Decided Aug. 9, 1988.

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth

Edward Nelson Rickman, Florence, Ariz., in pro. per.

Thomas Prose, Asst. Atty. Gen., Phoenix, Ariz., for defendants-appellees.

Before GOODWIN, Chief Judge, SCHROEDER and POOLE, Circuit Judges.

SCHROEDER, Circuit Judge:

Rickman, an inmate at the Arizona State Prison, appeals pro se the district court's grant of summary judgment to prison officials in this 42 U.S.C. § 1983 action. Rickman has challenged the prison's visual strip search policy. We affirm.

Arizona State Prison policy requires prisoners in the administrative segregation unit to submit to visual strip and body cavity searches when leaving their cells. Administrative segregation is the highest custody status that can be assigned an inmate, and is used for inmates requiring close supervision. Rickman refused to submit to such a search, and consequently he has not been allowed to leave his cell to go to the exercise yard. Rickman then filed this section 1983 action against five prison officials challenging the prison policy. The district court granted the defendants' motion for summary judgment.

Rickman argues that the prison policy requiring visual strip searches violates his fourth amendment and due process rights.

Circuit Rule 34–4 and Fed.R.App.P. 34(a).

However, the Supreme Court has stated that judicial deference to prison administrators should be "wide-ranging," especially concerning "the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447 (1979). In *Wolfish,* the Court held that the fourth amendment does not prohibit strip searches and visual inspection of body cavities of all inmates, including pretrial detainees, who have had contact visits with persons outside the prison institution. *Id.* at 558, 99 S.Ct. at 1884. In making this determination, the Court used a balancing test.

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Id.* at 559, 99 S.Ct. at 1884. Although the Supreme Court has not ruled on the issue of routine visual body cavity searches of inmates, other circuits have applied the *Wolfish* analysis to such searches and found them constitutional. *See, e.g., Goff v. Nix,* 803 F.2d 358, 370–71 (8th Cir.1986), *cert. denied,* —— U.S. ——, 108 S.Ct. 115, 98 L.Ed.2d 73 (1987); *Campbell v. Miller,* 787 F.2d 217, 228 (7th Cir.), *cert. denied,* 479 U.S. 1019, 107 S.Ct. 673, 93 L.Ed.2d 724 (1986); *Arruda v. Fair,* 710 F.2d 886, 888 (1st Cir.), *cert. denied,* 464 U.S. 999, 104 S.Ct. 502, 78 L.Ed.2d 693 (1983).

Here, the scope of the challenged prison policy is limited. The searches are conducted on convicted prisoners, and involve inmates confined to administrative segregation, which is the most restrictive unit. Likewise, the manner in which the searches are conducted creates limits on the degree of intrusiveness. The searches are conducted only when inmates leave their cells, are visual, and involve no touching. *See Bonitz v. Fair,* 804 F.2d 164, 172–73 (1st Cir.1986) (discussing differences between visual searches and searches involving touching).

The Supreme Court has acknowledged that maintaining prison safety and preventing the introduction of contraband into the prison are important objectives of penal institutions. *See, e.g., Hudson v. Palmer,* 468 U.S. 517, 526–27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984). In the case before us, Warden Avaniti explained in his affidavit that the search policy was instituted to maintain the high security required of the administrative segregation unit. In *Goff* the Eighth Circuit observed that security considerations justified such searches of inmates in segregation units.

> The record in this case reflects what this Court and other courts know and long have acknowledged, namely that weapons, drugs, and other items of contraband are serious problems in our nation's prisons.... The security concerns in this case are even greater in our view than those in *Wolfish....* The searches here apply in large part to inmates who are in segregation units because of their inability to conform to the prison rules. Moreover, the searches are not any more intrusive or demeaning than those in *Wolfish.*

803 F.2d at 365. We similarly conclude that there is suitable justification for initiating the search policy.

Looking to the final consideration *Wolfish* requires us to consider, we observe that the challenged search procedure took place in Rickman's cell in the administrative segregation unit. Given the unit's security demands, this is a reasonable place for conducting such searches.

Rickman also contends that, because he has refused to submit to body searches upon leaving his cell, he has been deprived of his right to exercise time, sunlight, visits, free exercise of religion, medical treatment, and access to the law library. The inmates in *Goff* made similar claims, asserting that they were refused opportunities for medical care and attorney visits as a result of the search policy. *Goff,* 803

F.2d at 361, 368. The Eighth Circuit rejected this means of challenging the search policy, stating "[W]e do not believe that the inmates' assertion that they are refusing, because of a particular policy, activities or services that enjoy some constitutional protection can serve to invalidate that policy if it is otherwise permissible." *Id.* at 368. We endorse that view.

Rickman does not allege that anything other than his own refusal to submit to visual body cavity searches precludes him from utilizing the exercise period, medical treatment, visits, and access to legal materials that would otherwise be available to him. Rickman's constitutional rights were not violated by his own refusal to utilize opportunities that would be available to him if he complied with the search policy.

AFFIRMED.