62 F.3d 1424
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Mark A. KOCH, Plaintiff-Appellant,
v.
Samuel A. LEWIS, Department of Corrections; Roger Crist,
Warden, complex for Florence; Ernie Salazar, Deputy Warden
for the Administrative Detention Unit; Fred Ballard, Major
of Security for East Unit; Chuck Goldsmith, Captain of
Security for East Unit; et al., Defendants-Appellees.
 No. 93-17250.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 16, 1995.*
Decided Aug. 1, 1995.
 
 Before: SCHROEDER, BEEZER and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 OVERVIEW
 
 2
 Mark A. Koch is a convicted felon in the custody of the Arizona Department of Corrections (ADOC). He is currently incarcerated at the Arizona State Prison Complex in Florence, Arizona. Koch brought this 42 U.S.C. Sec. 1983 action against various ADOC officials (prison officials, or defendants), alleging that the officials violated his civil rights when, in retaliation for other court actions he had previously filed against them, they forced him, without proper cause, to submit to two urinalysis tests, mishandled his urine samples and exposed them to contamination, and--after the urine samples tested positive for drugs--placed him in administrative detention and revoked some of his earned good time credits. Koch also claims the prison officials deprived him of his hobbycraft property without due process of law, failed to give him adequate notice of his alleged rules violation, and subjected him to unreasonable strip and body cavity searches.
 
 
 3
 The district court denied Koch's motion for summary judgment and granted summary judgment in favor of the defendants. Koch appeals the district court's order. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm in part and reverse in part.
 
 FACTS
 
 4
 Sometime prior to September 26, 1990, ADOC officials allegedly received confidential information that inmate Mark Koch was using drugs in violation of prison rules. On September 26, 1990, the officials obtained a urine sample from Koch. A urinalysis was conducted on October 1, 1990, and Koch's urine sample tested positive for amphetamines.
 
 
 5
 On that same day, Koch was provided with ADOC Discipline Forms 1 and 2. Form 1, entitled "Notice of Alleged Rule Violation," notified Koch there were charges pending against him. Form 2, entitled "Report of Violation--Notification of Findings," described the violation with which Koch was charged--possession or use of drugs--and the evidence upon which the charge was based--the positive urinalysis result. Koch was also informed that the urinalysis result and testimony of the reporting officer would be used against him in his disciplinary hearing.
 
 
 6
 On November 7, 1990, Koch's disciplinary hearing was held and he was found guilty of drug use violations. Koch received a Notification of Discipline Committee Findings, which indicated that the committee's decision was based on the positive urinalysis result and the reporting officer's testimony that the urinalysis was conducted in accordance with policy and for investigative purposes.
 
 
 7
 On November 19, 1990, Koch was required to submit another urine sample. A urinalysis was conducted November 20, 1990, and this second sample tested positive for marijuana. That same day, Koch was again given notice of the charges pending against him and a list of the witnesses and evidence to be used against him at his disciplinary hearing.
 
 
 8
 As a result of the second positive urinalysis, on November 20, 1990, Koch was transferred to the Administrative Detention Unit/Cellblock 6 (ADU). While in administrative detention, and in accordance with ADU policy, Koch was subjected to strip and body cavity searches every time he left his cell for any reason. Koch's stained glass hobbycraft materials were also confiscated.
 
 
 9
 Koch's second disciplinary hearing was held on November 30, 1990. Again Koch was found guilty of using drugs in violation of prison rules. The Notification of Discipline Committee Findings which Koch received indicated the decision was based on the positive urinalysis result. Based on both violations, Koch lost a total of 180 days of earned "good time" credit.
 
 
 10
 The record reveals that, prior to filing the present claim, Koch had brought numerous other actions against ADOC officials. In one of these actions, filed in federal district court, Koch claimed, among other things, that during a one-month confinement in the Complex Detention Unit (CDU) he had been denied meaningful access to the courts by unreasonable restrictions on his use of the law library; subjected to unreasonable strip and body cavity searches before and after each library visit; and denied his right of privacy because, as a consequence of the physical layout of the CDU, he was required to shower in view of visitors to the prison. On October 4, 1989, District Judge Richard M. Bilby granted summary judgment in favor of Koch on Koch's court access and unreasonable search claims. Subsequently, on October 25, 1989, Judge Bilby entered judgment against the defendants on Koch's right of privacy claim.
 
 
 11
 In conjunction with other inmates, Koch also brought an action against ADOC officials stemming from a 1984 incident in which the prisoners were forced to undergo rectal cavity searches because of reports that there were explosives in their unit. Vaughan v. Ricketts, 859 F.2d 736, 738 (9th Cir. 1988), cert. denied, 490 U.S. 1012 (1989). The searches were conducted on a table in an open hallway, in unsanitary conditions, and within view of prison personnel and other inmates. Id. The case was tried before a federal jury. Vaughan v. Ricketts, 950 F.2d 1464, 1465 (9th Cir. 1991). On March 5, 1990, the jury returned a verdict finding that the searches had violated the prisoners' rights under both the Fourth and Eighth Amendments, but that the prison officials were entitled to qualified immunity on both claims. Id.
 
 
 12
 Finally, Koch's first amended complaint states that on September 11, 1990, he filed a state civil complaint against defendant Lewis for "trover and conversion, negligence, nonfeasance and misfeasance." The record does not indicate what events these claims were based on, or when or how they were resolved.
 
 
 13
 In the present action, Koch claims the prison officials targeted him for the urinalysis tests, and subjected him to disciplinary confinement in ADU and the loss of good time credits, in retaliation for the actions he had previously brought against them. He also argues that the urinalyses and subsequent disciplinary hearings violated his Fourteenth Amendment due process rights; the strip and body cavity searches to which he was subjected were unreasonable and violated his rights under the Fourth Amendment; he was deprived of his hobbycraft property without due process of law; and his due process rights were violated because his good time credits were forfeited in violation of state law.
 
 STANDARD OF REVIEW
 
 14
 We review de novo the district court's grant or denial of summary judgment. Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Our review is governed by the same standard the district court must apply pursuant to Federal Rule of Civil Procedure 56(c). Id. We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the substantive law. Id. In doing so, we must not weigh the evidence or determine the truth of the matter, but only determine whether there is a genuine issue for trial. Id.
 
 DISCUSSION
 
 15
 A. Drug Screening of Urine Samples and Subsequent Disciplinary Hearings
 
 
 16
 Koch raises a number of claims with regard to the drug screening of his urine and the disciplinary hearings conducted as a result of the two positive urinalysis results. First, he contends the urine tests were unreasonable because they were conducted without proper cause. Even if there was cause for ordering the tests, he contends his urine samples were not handled according to ADOC policy, that this created the possibility of contamination and, therefore, the disciplinary committee's reliance on the positive urinalysis results violated his right to due process. Finally, Koch argues his due process rights were violated because he was not given proper notice of his rules violation, and because the disciplinary committee failed to inquire into the reliability of the confidential informant who provided the information which allegedly prompted prison officials to order the urine tests in the first instance. We address each of these contentions in turn.
 
 1. Cause for Urine Tests
 
 17
 The parties agree that urine tests are searches for Fourth Amendment purposes. Forbes v. Trigg, 976 F.2d 308, 312 (7th Cir. 1992), cert. denied, 113 S. Ct. 1362 (1993); Spence v. Farrier, 807 F.2d 753, 755 (8th Cir. 1986); Storms v. Coughlin, 600 F. Supp. 1214, 1217 (S.D.N.Y. 1984). As such, urine tests must be conducted in a reasonable manner. Spence v. Farrier, 807 F.2d at 755. However, because the constitutional rights of prisoners are necessarily limited by the fact of their confinement and by the legitimate goals and policies of the penal institution, a search conducted in the prison setting may be reasonable even though it is conducted on a lesser showing of cause than would be required were the search performed on ordinary citizens. Bell v. Wolfish, 441 U.S. 520 (1979).
 
 
 18
 The prison officials contend the information provided by the confidential informant constituted adequate cause for ordering the urinalysis tests performed on Koch. Whether the informant even existed, however, is a disputed issue of fact, and therefore a triable issue regarding cause remains to preclude summary judgment.
 
 
 19
 In support of their motion for summary judgment, the defendants submitted the affidavit of Chuck Goldsmith, captain of the East Unit of the Florence prison complex--the unit in which Koch was housed before his transfer to administrative detention. In his affidavit, Goldsmith states that "[p]rior to September 26, 1990, [he] received confidential information that inmate Koch was using amphetamines while in ADOC custody" and "since the reliability of this information was unknown, [he] ordered an investigative urinalysis." Goldsmith Affidavit at p 2. Goldsmith does not state in this affidavit that the second urinalysis was also ordered based on information supplied by the same or another informant. In various other affidavits submitted in support of the defendants' summary judgment motions, the affiants assert that both urinalyses were conducted "for investigative purposes," but no mention of the underlying cause for the "investigation" is ever made. See, e.g., Gay Affidavit at p 2. Even crediting Goldsmith's assertion that the first urinalysis was part of an investigation triggered by a confidential informant, there is no basis for a finding that the second urinalysis was conducted for the same reason.
 
 
 20
 With regard to the first urinalysis, Koch submitted the "Request for Inmate Substance Screen" form, dated September 26, 1990, which was prepared by the prison officials. On the form, in the space following the heading "Test Authorized By," the notation "random" appears. While the form prepared for the second urinalysis indicates the urinalysis was "investigative," there is no similar indication on the first form. Based on this evidence, it is at least arguable that the first urinalysis, too, was not prompted, as the defendants contend, by information supplied by a confidential informant.[1]
 
 
 21
 Taken together, and construed in the light most favorable to Koch, this evidence raises a triable issue of fact regarding whether the first urinalysis, the second urinalysis, or both, were conducted as a result of information provided by a confidential informant or for some other, possibly illegitimate purpose. Therefore, summary judgment on this issue was inappropriate.
 
 2. Handling of Urine Samples
 
 22
 Koch argued before the district court that his urine samples were not handled in accordance with ADOC rules. He claimed that the ADOC officer who collected his urine sample failed to (1) secure a proper container prior to taking the samples, (2) properly label the container, (3) maintain a proper chain of custody regarding the samples, and (4) timely refrigerate the specimens until the urinalysis could be conducted. Koch also argued that failure to follow prison rules regarding the collection and handling of urine samples created the possibility that his samples were contaminated or otherwise rendered unreliable.
 
 
 23
 In support of his claim, Koch offered--aside from his own declaration--copies of the "Notice of Appeal" forms he filed with the prison's appeals officer to dispute the findings of the Disciplinary Committee at each of his disciplinary hearings. In these forms, Koch provides an account of the manner in which his urine samples were collected, and details the way in which the process deviated from prison policy regarding urine collection procedures.
 
 
 24
 The defendants responded by submitting the affidavit of Manuel Bingochea, the Correctional Services Officer (CSO) responsible for collecting urine samples. In his affidavit, Bingochea states that, although he cannot recall the details of how Koch's urine samples were procured, he normally follows ADOC collection procedures and has no reason to believe Koch's samples were handled any differently. Bingochea Affidavit at p 2.
 
 
 25
 Bingochea's assertions are not based on personal knowledge. Even if his affidavit is credited, however, a genuine dispute of material fact exists because Koch's assertions are in direct contradiction and, for purposes of summary judgment, the evidence must be viewed in the light most favorable to him.[2]
 
 
 26
 The defendants argue that Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989), supports the district court's grant of summary judgment in their favor. In Thompson, the Third Circuit held that the failure of prison officials to provide complete chain of custody evidence regarding a prisoner's urine sample does not give rise to a due process violation. Id. at 502. The court reasoned that in the context of prison disciplinary hearings, the requirements of due process are satisfied if there is "some evidence" to support a finding that the prisoner was using drugs, and positive urinalysis results--even absent a complete chain of custody--constitute "some evidence" of drug use. Id. (quoting Superintendent v. Hill, 472 U.S. 445, 455-56 (1985)).
 
 
 27
 The court in Thompson, however, was careful to point out there were no allegations in that case that the prison officials failed to follow their own procedures in handling the urine samples, or that the urine samples had been contaminated. Id. Where, as in this case, such allegations do exist, there is a factual issue as to whether a positive urinalysis result obtained from those samples constitutes "some evidence" of the prisoner's guilt. The defendants' reliance on Thompson, therefore, is misplaced.
 
 3. Notice of Rules Violation
 
 28
 Koch contends he was denied due process because he did not receive proper notice of the charges against him. He contends that, under ADOC rules, notice that a prisoner is suspected of using or possessing prohibited substances must be provided within 24 hours of the time the cause for suspicion arises. In his case, he argues, any suspicion regarding his use of drugs arose at the time the confidential information was provided, yet he did not receive notice of the suspected rules violation until several days later, after prison officials had obtained the positive urinalysis results.
 
 
 29
 The defendants do not dispute that ADOC rules regarding the type of notice required when a prisoner is suspected of using drugs are written in mandatory language and, therefore, create a liberty interest under the Fourteenth Amendment. See Hewitt v. Helms, 459 U.S. 460, 471-72 (1983) (prison regulations using language of mandatory character create protected liberty interest).[3] They contend, however, that under the rules, Koch was not entitled to notice of his suspected violation until an investigation of the suspected violation was completed. The investigation of Koch's suspected drug use was concluded once his urine samples tested positive for drugs, and there is no dispute Koch received notice within 24 hours of the time prison officials received the positive urinalysis results. Therefore, the defendants contend summary judgment in their favor was appropriate.
 
 
 30
 In support of their motion for summary judgment, the defendants submitted what they assert to be ADOC's policy regarding, generally, inmate urine collection and, specifically, the type of notice that is required when a prisoner is suspected of drug use. The policy's effective date is December 15, 1990.[4] Under the policy rules, urinalysis tests may be taken under the following conditions: (1) at random; (2) when a staff member has a reasonable belief that an inmate is using drugs; (3) when an investigation is underway to determine whether an inmate is using drugs; or (4) when an inmate leaves or returns from an absence from the institution. When a urine test is conducted upon reasonable belief, notice of the suspected drug violation must be provided within 24 hours of the time suspicion arises. However, when an investigation is underway, notice need not be given until the completion of the investigation, after the test results are returned.
 
 
 31
 The defendants argued before the district court that Koch's urine tests were conducted for investigative purposes and therefore he was not entitled to notice that he was suspected of using drugs until after his urine samples returned a positive result. The district court agreed, and granted the defendants summary judgment on this basis. In so ruling, however, the court failed to consider the evidence Koch submitted regarding ADOC's urine collection policy and notice rules.
 
 
 32
 Koch filed a copy of what he contended was ADOC's policy. The effective date of the policy Koch submitted was February 27, 1989.[5] Under Koch's version of the policy, urine tests may be conducted only at random, upon reasonable belief, upon the prisoner's return from an outside activity, or upon specific request by the Warden. When a test is conducted upon reasonable belief, notice of the suspected rules violation must be provided "at the time it is suspected."
 
 
 33
 Koch also submitted an "Abstract of Clarification Issues regarding Inmate Discipline," which was distributed by Ron Zuniga, ADOC's Assistant Director of Inspections and Investigations, on September 29, 1989. This abstract directs that, when an inmate is suspected of committing a rules violation, notice of the suspected violation must issue to the prisoner "within 24 hours after it is determined that he/she is the alleged violator." The abstract further provides that when a urine test is conducted upon a staff member's reasonable belief that an inmate is using drugs, the 24-hour period begins to run "at the time the staff member becomes aware of the suspected violation." If a urine test is conducted as an investigative tool, the period does not begin to run until receipt of the test results by institutional personnel. However, "[i]f a reasonable belief is established the time frame must start, regardless of whether the urine test is ordered as an investigative tool to confirm the situation."
 
 
 34
 When considered in conjunction with the evidence submitted by the defendants and construed in the light most favorable to Koch, the evidence Koch provided raises genuine issues of material fact regarding (1) what policy was in effect at the time Koch's urine tests were conducted; (2) whether Koch's urine tests were conducted upon "reasonable belief" or for purposes of an investigation; and (3) whether notice was required to be issued upon receipt of the confidential information or upon receipt of the positive urinalysis results. Summary judgment in favor of the defendants on these issues was inappropriate.
 
 4. Reliability of Confidential Informant
 
 35
 Koch argues his due process rights were further violated because the disciplinary committee failed to inquire into the reliability of the confidential informant who supplied the information which allegedly led to the "investigatory" urinalyses. On this issue, the district court's grant of summary judgment in favor of the defendants was plainly proper.
 
 
 36
 Both "Notification of Disciplinary Committee Findings" forms which Koch received indicated the committee's decision at each hearing was based on the positive urinalysis results and on the testimony of the reporting officer. The defendants also filed an affidavit asserting the same. See Gay Affidavit. Koch has presented no evidence that the committee considered, in addition, the information provided by the confidential informant.[6] In his affidavit, Sergeant John Gay states that the confidential information was never presented to the committee. Therefore, the cases Koch cites for the proposition that due process required some inquiry into the credibility of the informant are inapposite. In each of these cases, the disciplinary committee's findings regarding the prisoner were based at least in part on the confidential information provided to it. See Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987), cert. denied, 487 U.S. 1207 (1988); Taylor v. Wallace, 931 F.2d 698 (10th Cir. 1991); Kyle v. Hanberry, 677 F.2d 1386, 1389 (11th Cir. 1982); Hensley v. Wilson, 850 F.2d 269, 271 (6th Cir. 1988); McKinney v. Meese, 831 F.2d 728, 731 (7th Cir. 1987). Where the confidential information supplied by the informant plays no part in the committee's decision, the reliability of the informant is irrelevant.
 
 B. Strip and Body Cavity Searches
 
 37
 After Koch's second urine sample tested positive for drugs, Koch was transferred to ADOC's Administrative Detention Unit (ADU). While in administrative detention, and in accordance with ADU policy, Koch was subjected to strip and body cavity searches every time he left his cell, even though he was shackled and under guard at all times he was outside his cell. Koch contends these routine searches were unreasonable because the prison officials have not shown they were prompted by legitimate security concerns. He further contends the searches were unreasonable because, on various occasions, they were conducted in the presence of female prison officials, visiting civilians, and other prisoners.
 
 
 38
 We have previously considered and rejected these arguments. In Rickman v. Avainti, 854 F.2d 327 (9th Cir. 1988), we upheld as reasonable ADOC's policy of subjecting prisoners in the administrative segregation unit to strip and body cavity searches every time they leave their cells. We found the search policy was reasonably related to legitimate penological security interests.[7] Id. at 328. We have also held that such searches are not rendered unreasonable by virtue of the fact that they are occasionally visible to female guards, civilians or other prisoners. Grummett v. Rushen, 779 F.2d 491, 495 (9th Cir. 1985); Michenfelder v. Sumner, 860 F.2d 328, 334 (9th Cir. 1988).
 
 
 39
 Koch contends Rickman is not controlling because that case dealt with segregation inmates rather than detention inmates, and was premised on the fact that segregation inmates are particularly dangerous. He points out that prisoners may be placed in administrative detention for a variety of reasons not related to a determination that they pose particularly serious security concerns.
 
 
 40
 We reject this distinction. Rickman's rationale applies equally well to detention inmates and segregation inmates alike. Detention inmates, just like segregation inmates, "requir[e] close supervision," Rickman v. Avianti, 854 F.2d at 327. The Eighth and Fifth Circuits have recognized as much. In Goff v. Nix, 803 F.2d 358 (8th Cir. 1986) and Hay v. Waldron, 834 F.2d 481 (5th Cir. 1987), search policies identical to the one at issue here were found to be reasonable even as applied to prisoners who, like Koch, are in detention because they have violated prison rules, not because they have been found to be especially dangerous. See Goff, 803 F.2d at 360 n.1; Hay, 834 F.2d at 486 n.8.
 
 C. Deprivation of Property
 
 41
 Koch contends that, upon his transfer to the ADU, the defendants seized his stained glass hobbycraft material, valued at approximately $2,000. He further contends that his materials were not returned upon his release from ADU and that this amounted to a deprivation of his property without due process of law. The defendants respond that Koch was properly deprived of his hobbycraft materials only during the time he was in administrative detention, and that prison officials returned all his property upon his release from ADU. The district court concluded this was true, and granted summary judgment for the defendants on this basis. We disagree with the district court's conclusion because there was a genuine dispute of a material fact on this claim.
 
 
 42
 The evidence before the court on the property deprivation claim included the following: (1) a copy of a letter Koch wrote to prison officials on November 29, 1990, in which he complains that he has not received property slips for his hobbycraft materials; (2) a virtually illegible copy of an inventory sheet for Koch's property, from which it is impossible--without additional evidence--to conclude anything about the ultimate disposition of the hobbycraft material ; (3) Koch's declaration, in which he asserts that he never recovered the hobbycraft material; and (4) the affidavit of Ernie Salazar, Administrator of Cell Block 6, in which Salazar asserts--without specific reference to the hobbycraft material--that all Koch's property was returned to him upon his release from administrative detention. Based on this evidence, the district court concluded that any deprivation of Koch's property was merely temporary.
 
 
 43
 On a motion for summary judgment, however, the evidence must be viewed in the light most favorable to the nonmoving party. Federal Rule of Civil Procedure 56(c). The district court is not permitted to weigh the evidence or evaluate its credibility. Federal Rule of Civil Procedure 56(c). Viewed in the light most favorable to Koch, the evidence before the district court presented a genuine issue of material fact as to whether Koch was permanently or only temporarily deprived of his property. The district court could not have reached the conclusion that it did without crediting Salazar's assertions over Koch's. This it was not permitted to do.
 
 
 44
 Nonetheless, summary judgment in favor of the defendants on Koch's property deprivation claim is appropriate on an alternative ground. As the defendants contend, even assuming the truth of Koch's contention that his property was never recovered, Koch has not stated a proper due process claim because adequate state post-deprivation remedies are available to him. See Hudson v. Palmer, 468 U.S. 517 (1984); Parratt v. Taylor, 451 U.S. 527 (1981) (prisoner cannot state due process claim based on either negligent or intentional deprivation of his property by prison officials where adequate state post-deprivation remedies are available). Koch is free to bring a state law tort action to recover the value of his property.[8]
 
 
 45
 Koch argues a suit in tort is not an adequate state law remedy because under Arizona law prisoners are not granted indigent waivers of court costs and fees. However, he makes no assertion that inability to pay the costs associated with bringing suit would preclude him from seeking a state tort remedy. Under these circumstances, Koch has not stated a proper due process claim.
 
 D. Forfeiture of "Good Time" Credits
 
 46
 Koch claims his due process rights were violated because his earned "good time" credits were forfeited in violation of state law. Regardless of what the merits of this claim may be, if any, the claim was not alleged in Koch's complaint. As a result, we will not consider it in this appeal.
 
 E. Retaliation Claim
 
 47
 In its first, partial summary judgment order, the district court denied the defendants' motion for summary judgment on Koch's retaliation claim, finding that "material facts are disputed concerning whether plaintiff's participation in other lawsuits affected defendant's treatment of plaintiff."[9] This ruling was correct, and summary judgment on this claim should not have been granted.
 
 
 48
 The defendants contend Koch's retaliation claim is insufficient to withstand summary judgment because Koch has not alleged a chronology of events from which retaliation may be inferred. See Benson v. Cady, 761 F.2d 335, 342 (7th Cir. 1985). This contention is incorrect. As stated in the statement of facts above, Koch presented evidence that he won a prior section 1983 action against the prison officials in October 1989, and that in March of 1990 a jury returned a verdict in yet another of his actions against the officials. See Vaughan v. Ricketts, 950 F.2d 1464 (9th Cir. 1991). Koch also alleged that on September 11, 1990, he filed a state civil complaint against defendant Lewis. Koch's urine samples were taken on September 26, 1990 and November 19, 1990. The proximity of these events is more than adequate to raise an inference that the urine tests were ordered for purposes of retaliation. Cf. Benson v. Cady, 761 F.2d at 342 (insufficient chronology of events presented where alleged retaliatory action occurred five months after prisoner instituted suit).
 
 
 49
 We recognize that a prisoner suing prison officials for retaliation under section 1983 must allege not only that he was retaliated against for exercising his constitutional rights, but also that the retaliatory action did not advance legitimate penological goals. Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994); Rizzo v. Dawson 778 F.2d 527, 532 (9th Cir. 1985). In this case, there is no question Koch's urine tested positive for using drugs in violation of prison rules. Transferring Koch to administrative detention and requiring him to forfeit good time credits admittedly promoted the legitimate penological goal of imposing discipline for this kind of rules infraction.
 
 
 50
 Koch's retaliation claim, however, is premised on his contention that the urine tests were ordered for purposes of retaliation. The prison officials cannot contend subjecting Koch to urine tests without cause, in violation of the Fourth Amendment, advanced any legitimate penological interests. The disciplinary actions taken against Koch--transfer to administrative detention and loss of good time credit--were a direct result of the positive urinalysis results.
 
 
 51
 As stated earlier, a material issue of fact exists as to whether the prison officials ever received information from a confidential informant suggesting that Koch was using drugs. If they did not, the question remains whether they required Koch to undergo the urine tests in retaliation for the various lawsuits he had brought against them. Summary judgment on Koch's retaliation claim was therefore inappropriate.
 
 F. Defendants' Procedural Default
 
 52
 Finally, aside from attacking the district court's grant of summary judgment in favor of the defendants, Koch also argues that the court should have granted his motion for summary judgment because the prison officials failed to properly respond to it. He contends the defendants did not file a separate statement of facts in support of their responsive pleading, nor present specific facts--apart from their pleading--showing summary judgment in his favor was inappropriate. This, he argues, constituted a procedural default which mandated that judgment be entered in his favor as a matter of law.
 
 
 53
 Koch's contention is incorrect. In their response to Koch's cross-motion for summary judgment, the defendants incorporated by reference their own cross-motion for summary judgment and all the exhibits and affidavits filed in support of it, including their statement of facts. Contrary to Koch's contention, there was no procedural default. The district court did not err in denying his motion for summary judgment.
 
 CONCLUSION
 
 54
 We affirm the district court's denial of Koch's motion for summary judgment. We also affirm the court's grant of the defendants' summary judgment motion with respect to Koch's claims that: (1) he was denied due process because the disciplinary committee did not inquire into the reliability of the confidential informant; (2) the strip and body cavity searches to which he was subjected were unreasonable; (3) he was deprived of his hobbycraft property without due process; and (4) his due process rights were violated by forfeiture of his good time credits. We reverse the district court's summary judgment in favor of the defendants on the rest of Koch's claims, and remand those claims to the district court.
 
 
 55
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a); Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 We recognize that if the first urinalysis were truly conducted on a "random" basis, as the "Request for Inmate Substance Screen" form seems to indicate that it was, this in itself would render the urinalysis "reasonable" for Fourth Amendment purposes. See Spence v. Farrier, 807 F.2d at 755 (finding random urine collection and testing practices reasonable). Compare Storms v. Coughlin, 600 F. Supp. at 1223 (urinalysis tests unreasonable where procedures for selecting inmates to be tested not truly "random"). The defendants, however, do not argue that the urinalysis was random
 
 
 [2]
 Based on this reasoning, the district court found, in its first order filed November 21, 1992, that factual issues existed concerning the manner in which Koch's urine samples were handled and whether it accorded with ADOC rules. The court did not address this issue in its second, dispositive order granting summary judgment in favor of the defendants
 
 
 [3]
 In Sandin v. Conner, 63 U.S.L.W. 4601 (U.S. June 19, 1995), a majority of the Supreme Court recently abandoned the reasoning of Hewitt which granted prisoners a liberty interest based on mandatory language in prison regulations. In doing so, however, the Court did not reject the concept of state-created liberty interests nor overrule Hewitt. Id. at 4604 and n.5. We do not address the impact of Sandin on this case because the parties did not have the opportunity to brief the issue and the district court did not have the opportunity to address it. We alert the parties and the district court, however, that on remand Sandin may be relevant to the resolution of Koch's claim regarding notice of his rules violation
 
 
 [4]
 The defendants actually submitted several copies of the policy, each with a different effective date. The copy effective December 15, 1990 was the most recent
 
 
 [5]
 Like the defendants, Koch actually submitted several copies of the policy bearing various effective dates. The most recent effective date was February 27, 1989
 
 
 [6]
 Koch points out that, in its first order, the district court held that "it requires a leap in logic to state that the [confidential] information never played a part in the plaintiff's disciplinary conviction." This comment by the district court is correct to the extent that, according to the defendants, the urinalyses would not have been conducted were it not for the informant's tip. It does not mean, however, that the confidential information was considered by the disciplinary committee
 
 
 [7]
 Other circuits are in accord. See Arruda v. Fair, 710 F.2d 886 (1st Cir.), cert. denied, 464 U.S. 999 (1983); Hay v. Waldron, 834 F.2d 481 (5th Cir. 1987); Goff v. Nix, 803 F.2d 358 (8th Cir. 1986), cert. denied, 484 U.S. 835 (1987)
 
 
 [8]
 Because Koch does not dispute it, we assume to be true the defendants contention that sovereign immunity would not preclude Koch from bringing a suit in tort
 
 
 [9]
 In its subsequent, dispositive order--in which the court granted summary judgment in favor of the defendants on all Koch's claims--the court did not address the retaliation claim