WIENER, Circuit Judge,
specially concurring.
“We judge best when we judge least, particularly in controversial matters of high public interest.”[1] In this and every other appeal, we should decide only the case before us, and should do so on the narrowest possible basis. Mindful of this credo, I concur in part and, with respect, specially concur in part.
The sole substantive issue in this appeal is whether the admissions process employed by the law school for 1992 meets muster under the Equal Protection Clause of the Fourteenth Amendment. The law school offers alternative justifications for its race-based admissions process, each of which, it insists, is a compelling interest: (1) remedying the present effects of past discrimination (present effects) and (2) providing the educational benefits that can be obtained only when the student body is diverse (diversity).[2]
As to present effects, I concur in the panel opinion’s analysis: Irrespective of whether the law school or the University of Texas system as a whole is deemed the relevant governmental unit to be tested,[3] neither has established the existence of present effects of past discrimination sufficient to justify the use of a racial classification.[4] As to diversity, however, I respectfully disagree with the panel opinion’s conclusion that diversity can never be a compelling governmental interest in a public graduate school. Rather than attempt to decide that issue, I would take a considerably narrower path — and, I believe, a more appropriate one — to reach an equally narrow result: I would assume arguendo that diversity can be a compelling interest but conclude that the admissions process here under scrutiny was not narrowly tailored to achieve diversity.
I
THE LAW
A. Equal Protection
The Equal Protection Clause provides that “[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws.”[5] Accordingly, “all racial classifications, imposed by whatever federal, state, or local governmental actor, must be ana *963 lyzed by a reviewing court under strict scrutiny.”[6] Racial classifications will survive strict scrutiny “only if they are narrowly tailored measures that further compelling governmental interests.”[7] Thus, strict scrutiny comprises two inquiries of equal valence: the “compelling interest” inquiry and the “narrow tailoring” inquiry.[8] Moreover, these inquiries are conjunctive: To avoid constitutional nullity, a racial classification must satisfy both inquiries. Failure to satisfy either is fatal.
B. Racial Classification
None dispute that the law school’s admission process for 1992 employed a racial classification. Depending on an applicant’s race, his request for admission was considered under one of three different (and, as explained in the panel opinion, often dispositive[9]) TI admission ranges: one for blacks only, a second for Mexican Americans only, and a third for all other races and nationalities, including non-Mexican Hispanic Americans. In short, each applicant for admission to the law school was classified by race, and his application was treated differently according into which of those three racial classifications it fell. Thus, the law school’s 1992 admissions process, like all racial classifications by the government, is subject to strict scrutiny.[10]
C. Strict Scrutiny
The law school contends that it employs a racially stratified admissions process to obtain, inter alia, the educational benefits of a diverse student body. Translated into the constitutional idiom, the law school insists that achieving student body diversity in a public graduate school is a compelling governmental interest. The law school invokes the opinion of Justice Powell in Regents of the University of California v. Bakke[11] to support that postulate. The panel opinion rejects that support, concluding that from its inception Bakke had little precedential value and now, post-Adarand, has none. My fellow panelists thus declare categorically that “any consideration of race or ethnicity by the law school for the purposes of achieving a diverse student body is not a compelling interest under the Fourteenth Amendment.” [12]
This conclusion may well be a defensible extension of recent Supreme Court precedent, an extension which in time may prove to be the Court’s position. It admittedly has a simplifying appeal as an easily applied, bright-line rule proscribing any use of race as a determinant. Be that as it may, this position remains an extension of the law— one that, in my opinion, is both overly broad and unnecessary to the disposition of this case. I am therefore unable to concur in the majority’s analysis.
My decision not to embrace the ratio decidendi of the majority opinion results from three premises: First, if Bakke is to be declared dead, the Supreme Court, not a three-judge panel of a circuit court, should make that pronouncement. Second, Justice O’Connor expressly states that Adarand is not the death knell of affirmative action — to *964 which I would add, especially not in the framework of achieving diversity in public graduate schools.[13] Third, we have no need to decide the thornier issue of compelling interest, as the narrowly tailored inquiry of strict scrutiny presents a more surgical and — it seems to me — more principled way to decide the case before us.[14] I am nevertheless reluctant to proceed with a narrowly tailored inquiry without pausing to respond briefly to the panel opinion’s treatment of diversity in the context of the compelling interest inquiry
D. Is Diversity A Compelling Interest?
Along its path to a per se ban on any consideration of race in attempting to achieve student body diversity, the panel opinion holds (or strongly implies) that remedying vestigial effects of past discrimination is the only compelling interest that can ever justify racial classification[15] The main reason that I cannot go along with the panel opinion to that extent is that I do not read the applicable Supreme Court precedent as having held squarely and unequivocally either that remedying effects of past discrimination is the only compelling state interest that can ever justify racial classification, or conversely that achieving diversity in the student body of a public graduate or professional school can never be a compelling governmental interest. Indeed, the panel opinion itself hedges a bit on whether the Supreme Court’s square holdings have gone that far,[16] particularly in the realm of higher education.[17]
Between the difficulty inherent in applying Bakke[18] and the minimal guidance in *965 Adarand,[19] the definition and application of the compelling interest inquiry seems to be suspended somewhere in the interstices of constitutional interpretation. Until further clarification issues from the Supreme Court defining “compelling interest” (or telling us how to know one when we see one), I perceive no “compelling” reason to rush in where the Supreme Court fears — or at least declines — to tread. Instead, I would pretermit any attempt at a compelling interest inquiry and accept Justice O’Connor’s invitation to apply the Court’s more discernible and less intrusive “narrow tailoring” precedent.[20] Thus, for the purpose of this appeal I assume, without deciding, that diversity is a compelling interest,[21] and proceed to the narrowly tailored inquiry.
E. Test For Narrow Tailoring
When strictly scrutinizing a racial classification for narrow tailoring, the first question is “What is the purpose of this racial classification?” [22] The present effects rationale having proven feckless in this case, today’s answer to that first question is a given: The law school’s purpose is diversity. Accordingly, I perceive the next question to be, “Was the law school’s 1992 admissions process, with one TI range for blacks, another for Mexican Americans, and a third for other races, narrowly tailored to achieve diversity?” I conclude that it was not. Focusing as it does on blacks and Mexican Americans only, the law school’s 1992 admissions process misconceived the concept of diversity, as did California’s in the view of Justice Powell: Diversity which furthers a compelling state interest “encompasses a far broader array of qualifications and characteristics of which racial or ethnic origin is but a single though important element.”[23]
*966 When the selective race-based preferences of the law school’s 1992 admissions process are evaluated under Justice Powell’s broad, multi-faceted concept of diversity, that process fails to satisfy the requirements of the Constitution.[24] The law school purported to accomplish diversity by ensuring an increase in the numbers of only blacks and Mexican Americans in each incoming class to produce percentages — -virtually indistinguishable from quotas — of approximately five and ten percent, respectively. Yet blacks and Mexican Americans are but two among any number of racial or ethnic groups that could and presumably should contribute to genuine diversity. By singling out only those two ethnic groups, the initial stage of the law school’s 1992 admissions process ignored altogether non-Mexican Hispanic Americans, Asian Americans, and Native Americans, to name but a few.
In this light, the limited racial effects of the law school’s preferential admissions process, targeting exclusively blacks and Mexican Americans, more closely resembles a set aside or quota system for those two disadvantaged minorities than it does an academic admissions program narrowly tailored to achieve true diversity. I concede that the law school’s 1992 admissions process would increase the percentages of black faces and brown faces in that year’s entering class. But facial diversity is not true diversity, and a system thus conceived and implemented simply is not narrowly tailored to achieve diversity.
Accordingly, I would find that the law school’s race-based 1992 admissions process was not narrowly tailored to achieve diversity
and hold it constitutionally invalid on that basis. By so doing I would avoid the largely uncharted waters of a compelling interest analysis. Although I join my colleagues of the panel in their holding that the law school’s 1992 admissions process fails to pass strict scrutiny,[25] on the question of diversity I follow the solitary path of narrow tailoring rather than the primrose path of compelling interest to reach our common holding.
II
REMEDY
Before concluding, I am compelled to add a few words about the panel opinion’s “commentary” regarding the remedy to be imposed by the district eourt on remand. Without employing the express language of injunction or affixing that label to its holding, the panel opinion’s discussion of the remedy on remand is “strongly suggestive” and has all of the substantive earmarks of an injunction:
[The] plaintiffs have shown that it is likely that the law school will continue to take race into account in admissions unless it receives further judicial instruction to the effect that it may not do so for the purpose of (1) obtaining a diverse student body; (2) altering the school’s reputation in the community; (3) combating the school’s perceived hostile environment toward minorities; or (4) remedying the present effects of past discrimination by actors other than the law school.
It is not necessary, however, for us to order at this time that the law school be enjoined, as we are confident that the con *967 scientLous administration at the school, as well as its attorneys, will heed the directives contained in this opinion. If an injunction should be needed in the future, the district court, in its discretion, can consider its parameters without our assistance. Accordingly, we leave intact that court’s refusal to enter an injunction.[26]
Essentially, the substance of the quoted portion of the panel opinion constitutes a de facto injunction — telling the district court precisely what to tell the law school that it can and can’t do — albeit without the use of the word injunction. To me, if “it” has feathers, swims, waddles, and quacks like a duck, it is a duck; and I find such an “un-injunction” inappropriate. If instead we were simply to reverse and remand on the violation issue, we would stop short of finding de novo that the law school had violated these four plaintiffs’ equal protection rights. It seems unavoidable to me that until the district court determines that there has been a violation, a remedy cannot be fashioned and should not be the subject of appellate speculation.[27]
The district court denied the plaintiffs injunctive relief, but only after assigning the burden of proof to the wrong party.[28]
No member of this panel questions that, in the initial stanza of the burden-shifting minuet of Mt. Healthy Sch. Dist. Bd. of Educ. v. Doyle,[29] the plaintiffs met their burden. Once the plaintiffs did that, the burden should have shifted to the law school. Instead, the district court left it with the plaintiffs and concluded that they had failed to carry the ultimate burden. The district court’s failure to shift the burden to the law school, and the conclusion of that court which followed, were errors. Accordingly, like my colleagues of the panel, I would remand the case to the district court with instructions to relieve the plaintiffs of the misplaced burden while affording the law school the opportunity to prove that the prima facie violation established by the plaintiffs was essentially harmless. But it seems clear to me that this is where our analysis should end. As a result, I depart from the “commentary” in the panel opinion regarding the precise elements of the remedy to be fashioned by the district court if it should conclude on remand that the law school shall have failed to bear its burden.
Ill
CONCLUSION
I end where I began: We should only decide the issues necessarily before this court, and then only on the narrowest bases upon which our decision can rest. This is not a class action; nothing is before us here save the claims of four individual plaintiffs. These four individual plaintiffs properly challenge only the admissions process employed by the law school in 1992 — not the admissions process that was in place and employed in 1995, not the admissions process that is being employed in 1996, and not the admissions process to be applied in any future years. In sum, I would remand, and in the process I would take care not to eviscerate the discretion of the district court with excessive “commentary” or implicit directions on the precise nature of the remedy that must ensue. Rather, my remand would simply instruct the district court to apply the correct burden-shifting process articulated in Mt. Healthy, then see how the law school deals with it. That way, if the Mt. Healthy application should demonstrate the need for a remedy, the district court would be free to fashion the appropriate relief — including injunctive if necessary — for those among the individual plaintiffs whose individual cases warrant it. For this court to do anything beyond that impresses me as overreaching. *968 Thus I concur in the judgment of the panel opinion but, as to its conclusion on the issue of strict scrutiny and its gloss on the order of remand, I disagree for the reasons I have stated and therefore concur specially.

.League of United Latin American Citizens, Council No. 4434 v. Clements, 999 F.2d 831, 931 (5th Cir.1993) (Wiener, J., dissenting).

. See Hopwood v. State of Tex., 861 F.Supp. 551, 570 (W.D.Tex.1994).

. I agree with the panel opinion that the defendants are overreaching when they urge that the State of Texas or its primary and secondary school system should be the relevant governmental unit.

. Panel Opn. at 951-52 & n. 44.

. U.S. Const., amend. 14, § 1.

. Adarand. Constructors, Inc. v. Pena, - U.S. -, -, 115 S.Ct. 2097, 2115, 132 L.Ed.2d 158 (1995) (emphasis added).

. Id.

. See id. at -, 115 S.Ct. at 2117. ("Racial classifications ... must serve a compelling governmental interest and must be narrowly tailored to further that interest.”) (emphasis added); see also Miller v. Johnson, -U.S. -, -, 115 S.Ct. 2475, 2490, 132 L.Ed.2d 762 (1995) (“To satisfy strict scrutiny, the State must demonstrate that its districting legislation is narrowly tailored to achieve a compelling governmental interest.”).

. See Panel Opn. at 936 (explaining that a Mexican American or a black applicant with a TI of 189 is presumptively admitted, while an "other race” applicant with an identical TI is presumptively denied).

. Adarand, - U.S. at -, 115 S.Ct. at 2115.

. 438 U.S. 265, 98 S.Ct. 2733, 57 L.Ed.2d 750 (1978). Justice Powell opens his discussion of equal protection and diversity in Bakke by stating that the “attainment of a diverse student body ... clearly [is] a constitutionally permissible goal for an institution of higher education,” id. at 311-12, 98 S.Ct. at 2759-60, and, in the unique context of institutions of higher learning, he concludes that diversity is a compelling interest. Id. at 312, 98 S.Ct. at 2759-60.

. Panel Opn. at 944 (emphasis added).

. Adarand, - U.S. at -, 115 S.Ct. at 2117 (“When race-based action is necessary to further a compelling interest, such action is within the constitutional constraints if it satisfies the ‘narrow tailoring' test this Court has set out in previous cases.”).

. See, e.g., Rust v. Sullivan, 500 U.S. 173, 224, 111 S.Ct. 1759, 1788, 114 L.Ed.2d 233 (1991) (O'Connor, J. dissenting) ("It is a fundamental rule of judicial restraint ... that this Court will not reach constitutional questions in advance of the necessity of deciding them.”) (citing Three Affiliated Tribes of Fort Berthold Reservation v. Wold Engineering, P.C., 467 U.S. 138, 157, 104 S.Ct. 2267, 2279, 81 L.Ed.2d 113 (1984)).

. Panel Opn. at 944-46.

. The Court appears to have decided that “there is essentially only one compelling state interest to justify racial classification: remedying past wrongs.” Panel opn. at 944-45 (citing City of Richmond v. J.A. Croson Co., 488 U.S. 469, 493, 109 S.Ct. 706, 721-22, 102 L.Ed.2d 854 (1989) (plurality opinion) (emphasis added)).

. Panel Opn. at 945 n. 27, (quoting Wygant v. Jackson Bd. of Educ., 476 U.S. 267, 286, 106 S.Ct. 1842, 1853, 90 L.Ed.2d 260 (1986) (O’Connor, J. concurring in part and concurring in the judgment)). ("[Ajlthough its precise contours are uncertain, a state interest in the promotion of racial diversity has been found to be sufficiently 'compelling' at least in the context of higher education to support the use of racial considerations in furthering that interest.”).

. I readily concede that problems are encountered when efforts are made to apply the Supreme Court's Balelee decision. Panel Opn. at 941-42, 944, & 944 (respectively pointing out that (1) Bakke comprises multiple opinions and divergent analyses, (2) no Justice, other than Justice Powell, discusses diversity, and (3) Bakke is questioned in Adarand). The panel opinion fails to describe this last problem with precise accuracy. That opinion’s expurgated version of the quotation at 26, lines 736-42 makes it appear as though the Adarand majority questioned Bakke. In full, the sentence reads "[the Court's] failure to produce a majority opinion in Bakke, Fullilove, and Wygant left unresolved the proper analysis for remedial race-based governmental action.” Thus, although the Court acknowledges that Bakke et al. left things unresolved, I do not read this quotation, (as the panel opinion suggests) as an order to throw out Bakke — bath water, baby, and all.
Nevertheless, the fractured nature of Bakke's holding has left more questions than answers in its wake. As observed in the instant panel opinion, there has been "no [other] indication from the Supreme Court, ... [whether] the state's interest in diversity [in higher education] constitutes a compelling justification for governmental race-based classifications.” Panel Opn. at 945. I agree that Bakke is the only indication that diversity is a compelling interest. But, unlike the panel opinion, which jettisons Justice Powell's Bakke opinion because of its singularity, I find that singularity to be precisely the factor that makes Justice Powell’s opinion the most pertinent Supreme Court statement on this issue. Therefore, when and if the Supreme Court addresses this case or its analog, the Court will have no choice but to go with, over, around, or through Justice Powell's Balelee opinion. By assuming, as I do, that diversity is a compelling interest, however, these problems are avoided altogether.

. Recently, in Adarand the Supreme Court stated that it had "altered the [equal protection] playing field in some important respects.” - U.S. at -, 115 S.Ct. at 2118. In her opinion for the majority, however, Justice O’Connor repeatedly emphasizes that Adarand did not drive a stake through the heart of affirmative action. To the contrary, she emphatically states, “we wish to dispel the notion that strict scrutiny is 'strict in theory, but fatal in fact.’ " Id. at -, 115 S.Ct. at 2117 (quoting Fullilove, 448 U.S. 448, 519, 100 S.Ct. 2758, 2795, 65 L.Ed.2d 902 (Marshall, J., concurring in judgment)). Moreover, "[w]hen race-based action is necessary to further a compelling interest, such action is within the constitutional constraints if it satisfies the 'narrow tailoring’ test this Court has set out in previous cases.” Id.
It seems to me that as a practical matter, Adarand resolves very little. In fact, the much heralded change is quite limited: Race-based classifications, imposed by the federal government, are now subject to strict scrutiny. Curiously (or perhaps not so curiously given the enigmatic difficulty of the task), the Supreme Court declined to define compelling interest or to tell us how to apply that term. Indeed, the Court did not even decide the case before it, opting instead to remand the case for further adjudication.

. Id. (“[W]hen race-based action is necessary to further a compelling interest, such action is within the constitutional constraints if it satisfies the ‘narrow tailoring' test this Court has set out in previous cases.”).

. Although I assume without deciding that diversity is a compelling interest, if I had no choice but to address compelling interest I would do so in the context in which the issue is presented, i.e., the constitutionally permissible means of constructing an entering a class at a public graduate or professional school. This unique context, first identified by Justice Powell, differs from the employment context, differs from the minority business set aside context, and differs from the redistricting context; it comprises only the public higher education context and implicates the uneasy marriage of the First and Fourteenth Amendments. See Bakke, 438 U.S. at 311-12, 98 S.Ct. at 2759-60. Consequently, we play with fire when we assume an easy crossover of Fourteenth Amendment maxims pronounced in cases decided in such other contexts.
The panel opinion concludes that this contextual distinction is unimportant, holding that, whatever the context, remedying the past effects of discrimination is the only compelling interest that can justify a racial classification. Panel Opn. at 944-46. That opinion acknowledges, however, that Supreme Court precedent does not go this far: namely, the higher education context is different. Indeed the panel opinion quotes Justice O'Connor's words expressly stating that higher education is different. Panel Opn. at 945 n. 27 (quoting Wygant v. Jackson Bd. of Educ., 476 U.S. 267, 286, 106 S.Ct. 1842, 1853, 90 L.Ed.2d 260 (1986) ("[Although its precise contours are uncertain, a state interest in the promotion of racial diversity has been found to be sufficiently ‘compelling’ at least in the context of higher education to support the use of racial considerations in furthering that interest.”)).

. United States v. Paradise, 480 U.S. 149, 171, 107 S.Ct. 1053, 1066-67, 94 L.Ed.2d 203 (1987).

. Bakke, 438 U.S. at 316, 98 S.Ct. at 2761-62. In the portion of his opinion that addresses nar *966 row tailoring, Justice Powell concluded that California’s admission process misconceived the concept of "diversity.” Id. California’s preferential program, focused as it was solely on aiding minority applicants, was not necessary to attain diversity. Id.

. In the instant litigation, the law school created its own Catch-22 by advancing two putative compelling interests that ultimately proved to produce so much internal'tension as to damage if not fatally wound each other. Under the banner of prior discrimination, Texas had no choice but to single out blacks and Mexican-Americans, for those two racial groups were the only ones of which there is any evidence whatsoever of de facto or de jure racial discrimination by the State of Texas in the history of its educational system. But, by favoring just those two groups and doing so with a virtual quota system for affirmative action in admissions, the law school estops itself from proving that its plan to achieve diversity is ingenuous, much less narrowly tailored.

. Panel Opn. at 958-59.

. Hay v. Waldron, 834 F.2d 481, 484 (5th Cir.1987) (The law is well-settled that the grant or denial of injunctive relief rests in the sound discretion of the district court)', Lubbock Civ. Lib. Union v. Lubbock Ind. Sch. Dist., 669 F.2d 1038, 1048 (5th Cir.1982), cert. denied, 459 U.S. 1155, 103 S.Ct. 800, 74 L.Ed.2d 1003 (1983).

. Panel Opn. at 956 ("We conclude that the Mt. Healthy methodology is appropriate in the instant case."). On this point, I agree with the panel majority that the Mt. Healthy burden-shifting minuet should apply.

. 429 U.S. 274, 284, 97 S.Ct. 568, 574-75, 50 L.Ed.2d 471 (1977).